James D. RICE, Plaintiff-Appellant,

v.

LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant-Appellee.

No. 14737.

United States Court of Appeals Sixth Circuit.

Nov. 21, 1962.

Vincent J. Hargadon, Louisville, Ky., Arnold J. Lemaire, Louisville, Ky., on brief, for appellant.

John P. Sandidge, Louisville, Ky., Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, Ky., H. G. Breetz, M. D. Jones, Louisville, Ky., on brief, for appellee.

Before CECIL, Chief Judge, McALLISTER, Circuit Judge, and BOYD, District Judge.

CECIL, Chief Judge.

The plaintiff-appellant, James D. Rice, brought an action against Louisville & Nashville Railroad Company, the defendant-appellee, in the United States District Court for the Western District of Kentucky, to recover damages for an injury alleged to have been caused by the negligence of the railroad company. The action was brought under and by virtue of Federal Employers' Liability Act (Section 51, Title 45 U.S.C.). The parties will be referred to as plaintiff and defendant.

The plaintiff charged the defendant with negligence in maintaining the premises in and around Station No. 12, the location of a main line switch, and in maintaining a defectively operating switch. The case was tried to a jury and resulted in a verdict and judgment for the defendant. The plaintiff appealed.

We are not here concerned with the facts of the alleged accident, but with the procedure of the trial.

On or about March 25, 1958, at night, the plaintiff while off duty was drinking with some fellow employees, at a local tavern near Station No. 12 of the defendant's Decoursey Yards. The plaintiff became intoxicated and someone hid his car as a joke. Not finding his car, the plaintiff left but returned to the railway premises about 1:30 a. m. Here he was observed by the railway police. They took him to his home and he was charged with violation of Rule "G" for misconduct and intoxication on railway property.

A hearing was had by the railway company on March 28, 1958. Several witnesses were called and the plaintiff testified and admitted his activities on the night in question. On April 9th following, he received formal notice that he was discharged for his misconduct and intoxication on the night of March 25th.

The alleged accident happened on the night of March 29th, the day after the hearing on the charges by the defendant. The plaintiff filed his complaint in January 1960, and the trial was held in May 1961. After the jury was impanelled, in a conference between the court and counsel, the trial judge, over the objections of plaintiff's counsel, indicated that he would permit defense counsel to introduce evidence of the intoxication and discharge. This information had been previously brought out in a deposition taken in April before the trial. Plaintiff's counsel objected and, by telephone, the trial judge permitted the question to be answered, and said he would rule on the question of competency at the time of the trial.

After the court's ruling, counsel for plaintiff felt impelled, and we think with good reason, to himself bring this information before the jury in his opening statement and in the plaintiff's direct testimony.

This evidence of intoxication and discharge for violation of rules is highly inflammatory, and if competent at all, which is doubtful, should have been limited in scope as to the evidence and the jury instructed specifically and exactly on its purpose. It should have been admitted only under the utmost caution. We understand the theory of the court and counsel for the defendant to be that because the plaintiff had a hearing on March 28th, concerning his alleged misconduct on the night of March 25th, which he knew might well lead to his discharge, he might have a motive for fabricating a story about his injury. His discharge, which had been effected at the time of the trial, might cause him to have some animosity and prejudice against the railroad, which would result in biased and untrue testimony.

If this were the purpose of the testimony, it seems to have been completely lost sight of. Nowhere do we find that the plaintiff was ever asked if he had any animosity or prejudice against the railroad company because of his discharge. At page 53b of the appendix, during the direct testimony of the plaintiff, the trial judge said that they were not going into detail about the reason for the plaintiff's discharge by the railroad. This was proper but the matter seems to have gotten out of hand.

The only admonition or explanation of the court to the jury is at this point. The judge said: "The purpose of permitting it to be introduced into evidence, ladies and gentlemen of the jury, is merely to show the background and the relationship between the defendant and the plaintiff at the time this action was instituted." It does not explain the relevancy or the importance of the relationship or how or why it might affect the testimony of the plaintiff.

Actually, the only probative value there could be to this testimony would be whether the plaintiff thought he was unfairly treated and had some malice against the railroad by reason of his discharge. It is not the details of the affair that are material but only the fact that a discharge resulted. When the plaintiff admitted that he was intoxicated and discharged for violation of the rules, the evidentiary value of the incident was complete.

Counsel for the defendant not only cross-examined plaintiff at length on the subject, but introduced four witnesses on it. Trial counsel, for the defendant, said in his opening statement: "Now, the evidence in this case, we will show you without any contradiction whatsoever that Rice, on the 23rd day of March, 1958, was drunk. He came right over here to this yard office, abused the yardmaster, and they charged him with being drunk and abusive, and they fired him after a hearing in which he testified in detail, and you will hear every word of that, if you'd like." There was not a word as to why this might be pertinent to the issues, but only a condemnation of the man because he was drunk—not when the accident happened, but several days before.

The defense called C. R. Webster, Don Woods and W. G. Carpenter, eye-witnesses to the incident of misconduct, to testify to the details of the affair. It also called Mr. W. R. Hadley, who had conducted the hearing. This was all incompetent and prejudicial to the plaintiff.

Counsel for defendant, in his opening statement, said: "We will show you that he's been arrested and convicted for being drunk." The trial judge properly sustained an objection and counsel, not to lose his point, after the judge's ruling, repeated, "Convicted for being drunk." Counsel then asked plaintiff on cross-examination: "Is it true that on December 17, 1958, you were arrested for being drunk?" Again, an objection was properly sustained and the jury instructed not to consider the implications of the question.

Trial counsel, leaving no stone unturned to inject intoxication into the case, called Albert Rice, the uncle of the plaintiff and a loyal employee of the railroad. He was asked about a visit by the plaintiff to his home shortly after New Year's in 1961. He was asked: "Now, tell the jury, if you will, please, what his condition was at that time with reference to being drunk or sober?" Again, an objection was sustained and the jury admonished.

■ It is the general rule, followed by this Court, that cross-examination of a party with reference to prior convictions, for the purpose of impeachment, is limited to showing convictions for felonies or crimes involving moral turpitude. Henderson v. United States, 202 F.2d 400, 406, C.A.6, and cases there cited.

The questions were obviously not competent. These errors of counsel might have been cured by the admonitions of the court, had it not been for the cumulative effect of the injection of the prejudicial facts of intoxication into the trial.

As appears from the opening statement of counsel for the defendant, he misconceived the issue in the case and persistently pursued a course of attempting to prove that the plaintiff was an alcoholic and a drunkard.

■ Counsel for the defendant raise the question that plaintiff's counsel made no request for any admonition by the court concerning this evidence. Counsel for plaintiff objected to the introduction of the testimony at every point when it was offered. An objection is all that is necessary under Rule 46 F.R.Civ.P.

■ The claim that plaintiff's counsel opened the door, when he offered testimony of the incident on direct-examination, is without merit. When the court ruled before trial that this testimony would be admitted, counsel was justified in bringing it out on direct-examination, rather than having it dragged out on cross-examination.

■ In the state of the record at the close of the evidence, no admonition or instruction of the court would have cured

the prejudice resulting from the admission of the incompetent evidence. Counsel for defendant lost sight of any legitimate purpose of the testimony, concerning the plaintiff's intoxication on March 25, 1958, and his subsequent discharge for violation of rules. The plaintiff was prejudiced thereby in his right to have a fair trial on the real issue involved, and the judgment of the District Court is vacated and the case remanded for a new trial.