James D. RICE, Plaintiff-Appellant,

v.

LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant-Appellee.

No. 15770.

United States Court of Appeals Sixth Circuit.

May 7, 1965.

Vincent J. Hargadon, Louisville, Ky., Arnold J. Lemaire, Louisville, Ky., on the brief, for appellant.

Robert P. Hobson, Louisville, Ky., John P. Sandidge, Woodward, Hobson & Fulton, H. G. Breetz, M. D. Jones, Louisville, Ky., on the brief, for appellee.

Before WEICK, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This cause is before this Court for the second time for review of a trial and proceeding in the United States District Court for the Western District of Kentucky, wherein a judgment was granted in favor of Louisville and Nashville Railroad Company, defendant-appellee, and against the plaintiff-appellant, James D. Rice. The parties will be referred to as plaintiff and defendant.

The plaintiff's action is brought under and by virtue of Federal Employers Liability Act. (Sec. 51, Title 45, U.S.C.) The defendant is charged with negligently maintaining a defective switch and with negligently maintaining the premises around the switch at Station number 12 in its Decoursey yards, at Covington, Kentucky. The plaintiff alleges that on the night of March 29, 1958, while in the performance of his duties as a switchman, he was injured as a result of the improper operation of the switch and the failure of the defendant to furnish him a safe place in which to work.

In the proceeding now before us for review, judgment was entered for the defendant upon the return of a jury verdict. The plaintiff appeals from that judgment. A previous trial in the District Court had the same result. On appeal we vacated the judgment and remanded the case to the District Court for a new trial. (Rice v. Louisville and Nashville Railroad Company, 6 Cir., 309 F.2d 930.)

The issues in this case, as properly submitted to the jury by the trial judge, were: The alleged negligence of the defendant in either maintaining a defective switch or in maintaining an unsafe place for the plaintiff to work; injuries to the plaintiff; whether such injuries, if any, were caused in whole or in part by the negligence of the defendant (Section 51, Title 45, U.S.C.); the extent of plaintiff's alleged injuries; and the amount of his damages resulting therefrom.

Counsel for the plaintiff contends that the trial judge erred in not giving a tendered instruction to the jury, which would have resulted in a peremptory instruction for the plaintiff, and failing in this, the trial judge erred in not granting a motion for judgment notwithstanding the verdict. This is a misconception of a trial and the function of a jury in a trial wherein the plaintiff has the burden of proving his case. Whether the switch was defective or the premises surrounding it an unsafe place to work were questions of fact for the jury to determine. Likewise, it was a question for the jury to determine whether the conditions in which they found the switch and the premises, constituted negligent maintenance on the part of the defendant. Further, it was the function of the jury to decide whether any negligence of the defendant was wholly or partly responsible for injuries to the plaintiff. It was the duty of the plaintiff to sustain the burden of proof on these issues by a preponderance of the evidence.

The principal question on this appeal grows out of an event, involving the plaintiff, that occurred on March 25, 1958, four days prior to the alleged accident which is the subject of this action. On the night of March 25th, the plaintiff was drinking with some of his companions in a tavern near the railroad premises. He became intoxicated and could not find his car, either because it had been hidden by some of his friends, or because it was stolen. In his confusion in hunting his car he wandered onto the railroad premises and was eventually taken home by two railroad policemen, Woods and Carpenter. As a result of being on the railroad premises in an intoxicated condition, charges were filed against him for violating Rule "G" of the company rules. A hearing was held on these charges on March 28th. The alleged accident happened on March 29th, and on April 9th, the plaintiff was notified that he was discharged.

This event of March 25th has been given undue prominence in the case and resulted in confusion in both trials in the District Court. As we view it, this event is wholly unrelated to the merits of the plaintiff's cause of action. Both trials, however, were conducted as though it were a part of the res gestae of the alleged accident. It was because of the prejudicial injection of evidence of this March 25th event into the record that prompted us, on the first appeal, to reverse and remand for a new trial. (309 F.2d 930) This same assignment of error is again before us and we are concerned whether the second trial was conducted free of this prejudicial evidence in accordance with our opinion.

Trial counsel for defendant, in his opening statement, said:

"It is important in this case that you know that on the 25th day of March, 1958—and remember that date because it is most important— this man (Indicating the plaintiff), who is now suing the Louisville & Nashville Railroad for more than a quarter of a million dollars, was arrested on the property of the Louis-

ville & Nashville Railroad Company ——(objection) for being drunk—(objection) and abusive. Now that was on the 25th—(By the Court: Overruled)—day of March, 1958, charges were filed against him for that conduct and a hearing was had, and you will hear much more about that."

This is an inaccurate statement. The defendant was not arrested in the sense that that term is generally used. In view of the limited relevance of the incident of March 25th, as hereinafter defined, this statement is prejudicial.

On cross-examination of the plaintiff, counsel asked him if he remembered March 25, 1958. On answering that he did remember, counsel asked him to tell the jury what happened on that occasion. Plaintiff proceeded to tell that he was out drinking with a bunch of switchmen at a tavern and he could not find his car, etc. Counsel interrupted the plaintiff's story to ask if he was drunk. Plaintiff parried this question several times by saying he had been drinking.

Counsel then produced a three-page statement and asked plaintiff to identify his signature. This question was also parried. Mr. Hadley, who had conducted the hearing on the 28th, later identified the plaintiff's signature and the statement as a transcript of plaintiff's testimony at the hearing. Over objection of counsel for the plaintiff, the entire statement, covering eight pages of the appendix, was read to the jury. At the conclusion of the reading, plaintiff admitted his signature.

The admission of this statement of plaintiff's testimony at the hearing of the 28th was clearly improper. It was not related to the accident which was the subject of the action, it was not used to impeach oral testimony of the plaintiff and was not properly used even for impeachment purposes. Furthermore, it is not permissible to impeach on a collateral matter. Since the plaintiff did not directly answer counsel's question on cross-examination, "Were you drunk?", counsel apparently resorted to the statement to show that the plaintiff had previously

admitted that he was "drunk." A reading of the statement shows that the plaintiff did not admit to any more than drinking. There was then no point in referring to the statement and much less point in reading it. It could only serve to retry the railroad's charge against the plaintiff. Had this error been avoided it would have made unnecessary the incompetent and irrelevant cross-examination, by counsel for plaintiff, of witness Hadley, extending over twenty-two pages of the appendix.

As a part of defendant's case in chief, counsel called Donald Woods, who was a witness to the occurrence of March 25th and one of the railroad policemen who took the plaintiff home. W. G. Carpenter, the other railroad policeman who helped take the plaintiff home, was also called to testify. W. R. Hadley, the railroad supervisor, who conducted the hearing of the 28th, was called to testify to the details of the hearing.

■ It was clearly error to call Hadley as a witness, to testify concerning the details of the hearing on the event of March 25th. As we said above, this affair was treated as though it were a part of the res gestae of the alleged accident. This was a retrial of the railroad's charge against the plaintiff. In our opinion, 309 F.2d 930 at 933, we said:

"The defense called C. R. Webster, Don Woods and W. G. Carpenter, eye-witnesses to the incident of misconduct, to testify to the details of the affair. It also called Mr. W. R. Hadley, who had conducted the hearing. *This was all incompetent and prejudicial to the plaintiff.*" (Emphasis added.)

As we point out hereafter, counsel may show without further comment that the plaintiff was discharged by the railroad company for violating Rule "G" by being on the railroad premises in an intoxicated condition. This is only for the purpose of allowing the jury to infer whether he had a motive for lying either about the happening of the alleged accident, the circumstances connected with the accident, or his injuries. In this connec-

tion, if the plaintiff denies on cross-examination that he was drunk or intoxicated, it would be proper to call railroad employees Donald Woods and W. G. Carpenter, who took plaintiff home on the night of March 25th, for the limited purpose of rebutting that denial. Unless there is such a denial there would be no purpose in calling them.

In argument to the jury, after the evidence was all in, counsel for the defendant said:

"But that's not all. Let's go back just a little bit to the 25th day of March when this man was arrested on the company's property for being drunk, and he was tried on the 28th and he was found guilty and discharged. That's all there is to it. That's all in the world there is to it, topside or bottom, regardless of the cross-examination that you heard Mr. Hargadon suggest.

"Let me tell you something. That's not all there is to it, not by a jug full. Here is Mr. Rice's own statement (Holding in hand), three pages of it. There is his signature (Indicating). That is the statement that he gave to this investigating board of his being drunk on the company's property. What did he tell you when he testified yesterday morning? He told you 'Oh, yes, I had been drinking.' "

As we have said, this incident of March 25th was wholly unrelated to the alleged accident and injuries. The only possible relation it could have to the case on trial would be to show that because of the plaintiff's discharge he might hold some prejudice or animosity toward the railroad company and thus have a motive, either for exaggerating his story or for not telling the truth.

■ The comments of counsel in his opening statement and in his oral argument to the jury, concerning this event of March 25th, the use of the statement above referred to, and the admission of evidence involving the details of the event and of the hearing, were prejudicial to the plaintiff. It was error to

permit these statements and to admit the evidence to which we have referred. Because of these errors, a new trial will be required. For clarification of this issue on a new trial, the trial court is instructed that the extent of inquiry on direct- or cross-examination, or comment by counsel, must be limited, as follows: That the plaintiff was discharged on April 9, 1958, as a result of a hearing on March 28, 1958, concerning the violation of a rule of the railroad company in entering upon the railroad premises, when off duty, in an intoxicated condition, and whether he was treated fairly in that hearing and had any prejudice or animosity against the railroad company by reason of it. If the plaintiff, either on direct- or cross-examination admits to the discharge by reason of being on the railroad premises in an intoxicated condition and the hearing for violating a rule, no further evidence can be submitted on the subject. It is only the fact of the discharge and the possible feeling of having been unfairly treated, which might cause the plaintiff to have a prejudice against the company and thus be a motive to not tell the truth, which gives this incident any evidentiary standing.

We said (309 F.2d 930, at 933):

"Actually, the only probative value there could be to this testimony would be whether the plaintiff thought he was unfairly treated and had some malice against the railroad by reason of his discharge. It is not the details of the affair that are material but only the fact that a discharge resulted. When the plaintiff admitted that he was intoxicated and discharged for violation of the rules, the evidentiary value of the incident was complete."

Other objections of counsel for plaintiff, relative to the selection and empanelling of the jury, are without merit. We find no abuse of discretion on the part of the trial judge in this respect.

The judgment of the District Court is vacated and the case remanded to the District Court for a new trial consistent with this opinion.