838 F.2d 1216
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dorian GRIFFIN (85-1992), Craig Griffin (85-2003),
Defendants-Appellants.
 Nos. 85-1992, 85-2003.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1988.
 
 Before KEITH, MILBURN, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, Dorian Griffin and Craig Griffin, appeal their convictions resulting from their participation in a scheme to obtain and distribute counterfeit currency. A multiple-count indictment was returned against seven defendants, including four brothers, Dwayne, Dorian, David, and Craig Griffin. Count One charged all the defendants with conspiracy to violate 18 U.S.C. Sec. 473, which prohibits dealing in counterfeit bills. Dorian Griffin was also charged with one count of passing and two counts of dealing in counterfeit. Craig Griffin was charged with one count of possession and one count of dealing in counterfeit currency. The jury found both Dorian and Craig Griffin guilty on all counts.[1]
 
 
 2
 The government's chief witness at trial was Dwayne Griffin. Dwayne testified that in June 1982 his brother Dorian first mentioned that he had an opportunity to buy counterfeit currency for twenty cents on the dollar. Dwayne agreed to participate in the purchase and gave Dorian $20,000. Dorian purchased $100,000 in counterfeit bills and gave one-half of the bills to Dwayne. The two brothers made a second purchase of counterfeit bills in August 1982.
 
 
 3
 Dwayne further testified that during the summer of 1983 he gave $100,000 in counterfeit bills to his brother Craig so that Craig could sell them. In September 1983, Dwayne instructed Craig to mail a package of counterfeit currency to their brother David, who was then incarcerated in federal prison in California, after having been convicted of possessing counterfeit. Craig took the package to the United Parcel Service (UPS) office, and used a fictitious name for the sender. Because the address label was illegible, UPS employees opened the package to look for a secondary address and discovered the counterfeit currency. At the direction of the Secret Service, UPS sent a notice that the package was undeliverable to the return addressee. Craig Griffin went to the UPS office to pick up the package and signed a package receipt with the same fictitious name he had used earlier. He was arrested after he left the office with the package.
 
 
 4
 David Maynard testified that Dorian Griffin sold him about $700 in counterfeit bills. Louis Nebel testified that he sold a Peugeot automobile engine to Dorian Griffin for six $100 bills, five of which were later discovered to be counterfeit.
 
 
 5
 Dorian Griffin testified in his own behalf and gave a different version of events. He denied any involvement with counterfeit money. He stated that it was his brother Dwayne who first approached him in June 1982 with a scheme to purchase counterfeit currency and cocaine from Colombia. Dorian testified that he was angered at the proposal and refused to become involved. In October 1983, Dwayne and Dorian Griffin met at the Parkcrest Motel Lounge. Dorian testified that Dwayne confided that he was going to buy two kilograms of cocaine at the motel that night. Dorian stated that he became angry at Dwayne, told him not to get involved with drugs, and grabbed the motel key from Dwayne's hand. Dorian was arrested as he was leaving the motel lounge.
 
 
 6
 On appeal, Dorian Griffin argues that the trial court erred by ruling that he could be impeached by a prior conviction, by admitting into evidence a coconspirator's hearsay statement, by permitting cross-examination into alleged unauthorized use of auto broker's licenses, and by improperly instructing the jury in response to a request it made during its deliberations. Craig Griffin also claims that the trial court erred in its response to the jury's request, and that there is insufficient evidence to sustain his conviction.
 
 
 7
 At the close of its case in chief, the government notified the trial court that it intended to use Dorian Griffin's 1983 conviction of possession of cocaine on cross-examination for impeachment purposes. The trial court held that the conviction would be admissible for that purpose. Defense counsel then introduced evidence of the prior conviction on direct examination of Dorian Griffin. The conviction was briefly referred to by the government on cross-examination and again in closing argument.
 
 
 8
 Although Dorian Griffin argues that the trial court erred in its preliminary ruling that the conviction could be used to impeach his credibility, under the circumstances of this case he waived any objection to that ruling by electing to bring the conviction in on direct examination.
 
 
 9
 Fed.R.Evid. 609(a)(1), which governs the admissibility of Dorian Griffin's prior conviction for the purpose of attacking his credibility, directs the trial judge to weigh the probative value of the conviction against its prejudicial effect. To properly perform this balancing test, the trial court must know the exact nature of the defendant's testimony. See Luce v. United States, 469 U.S. 38, 41 (1984). As the case unfolds, a pretrial ruling excluding or admitting evidence is subject to change, and the "district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." Id. at 41-42.
 
 
 10
 By introducing evidence of the prior conviction on direct examination, defendant altered the context with which the trial court had been confronted in making the preliminary ruling. In addition, this case presents an example of a situation where events at trial might lead a trial court to change or confirm a preliminary ruling. Dorian Griffin's defense, that he was outraged by the proposal to become involved with counterfeit and cocaine, was not before the trial court when it made the in limine ruling. Accordingly, the trial court was entitled to evaluate the probative value and prejudicial effect of the prior conviction under the actual circumstances which developed at trial, and we are in no position to review the preliminary ruling.
 
 
 11
 Rice v. Louisville & Nashville R.R., 309 F.2d 930 (6th Cir.1962), a civil case predating the Federal Rules of Evidence upon which defendant relies, can be distinguished on its facts. In that case, the trial court ruled, over plaintiff's objection, that defendant could introduce evidence of plaintiff's intoxication in a personal injury case. Although plaintiff then introduced the evidence himself, the Court of Appeals held that he had not waived his objection. Plaintiff had continued to object when defendant introduced four other witnesses to testify to the matter, the evidence was highly inflammatory and of doubtful competence, and the issue became a focal point in the case. None of these aggravating circumstances are present in this case.
 
 
 12
 We note also that defendant was able to minimize the adverse impact of the conviction by introducing it on direct. Defendant's choice here, whether to preserve his objection to admission of the conviction, or to introduce it himself to minimize the damage to his case, was one of trial strategy. See United States v. Mariani, 539 F.2d 915, 921 (2d Cir.1976) (defense counsel's own use of evidence of a prior conviction in its direct examination as a matter of trial strategy cured any error).
 
 
 13
 Dorian Griffin next argues that the trial court erred in admitting a hearsay statement made by a coconspirator.
 
 
 14
 Fed.R.Evid. 801(d)(2)(E) provides that a statement by a coconspirator during the course and in furtherance of the conspiracy is not hearsay. We have held that in order for a coconspirator's statement to be admissible, the trial court must find by a preponderance of the evidence that: (1) a conspiracy existed, (2) the defendant against whom the statement is offered was a member of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. United States v. Enright, 579 F.2d 980, 986 (6th Cir.1978). A defendant's objection to the admission of a coconspirator's statement is continuing, United States v. Vinson, 606 F.2d 149, 153 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980), and error is not waived by failing to renew the objection at the close of the government's case. The trial judge errs in admitting the statement of a coconspirator without making explicit findings on the record that all three of the Enright requirements have been satisfied. United States v. Mahar, 801 F.2d 1477, 1494 (6th Cir.1986).
 
 
 15
 Michael Simonds testified that he purchased counterfeit bills from Gerald Noble, a codefendant charged with conspiracy. Over defense counsel's objection, Simonds was permitted to testify that Noble told him that the bills came from Dorian Griffin. The statement was admitted conditionally, subject to the court's later determination that it was properly admissible under Fed.R.Evid. 801(d)(2)(E).
 
 
 16
 Dorian Griffin argues that the trial court failed to make any Enright findings and therefore it was error to admit the statement made by Gerald Noble. We have searched the record and agree with defendant that at no time did the trial court state unambiguously that Enright had been satisfied and the statement was admissible. "An appellate court is not the proper forum to conduct the needed factual hearing required under Enright and Vinson." Mahar, 801 F.2d at 1503.
 
 
 17
 Therefore, Case No. 85-1992 is remanded to the trial court for the sole purpose of making Enright findings. In the event that the trial court determines on remand that the statement was properly admitted, then defendant's conviction would stand, and we would retain jurisdiction of this case in order to review the trial court's Enright findings.
 
 
 18
 Dorian Griffin's remaining arguments require little discussion. He contends that the trial court erred in permitting the government to cross-examine him concerning his alleged unauthorized use of automobile broker's licenses. Dorian Griffin testified on direct that he was an automobile broker. During cross-examination, the government asked if he had ever used the auto broker's licenses of other brokers, and defendant stated that he had. The questions did not imply, and defendant did not testify, that his use of such licenses was improper. Defendant's case was not damaged in any way, and no error was committed by permitting the cross-examination.
 
 
 19
 Both Dorian and Craig Griffin claim that the trial court erred in responding to a request from the jury. During deliberations, the jury sought a transcript of one witness' testimony and asked whether defendants' father had been convicted. Dwayne Griffin had testified that the government agreed to drop charges against his father in exchange for Dwayne's guilty plea and cooperation with the government. The trial judge instructed the jury that a transcript was not immediately available and that they should rely upon their collective memory. Whether to allow testimony to be read back to the jury is within the sound discretion of the trial court. United States v. Padin, 787 F.2d 1071, 1076 (6th Cir.), cert. denied, 107 S.Ct. 93 (1986). The district court did not abuse its discretion by urging the jury to rely upon their collective memory.
 
 
 20
 Defendant Craig Griffin challenges the sufficiency of the evidence to support his convictions of conspiracy, possession of, and dealing in counterfeit. Because he did not move for judgment of acquittal, we may review the matter only for plain error. United States v. Bierley, 521 F.2d 191, 192 (6th Cir.1975). Viewing the evidence in a light most favorable to the government, the evidence shows that in March 1983, Craig received about $100,000 in counterfeit currency from his brother Dwayne for the purpose of selling it to others. In September 1983, Dwayne instructed Craig to mail a package of counterfeit money to David in prison in California. Using a fictitious name, Craig took the package to the UPS office and retrieved it when UPS notified the return addressee that the package was undeliverable. There was also testimony that Craig helped another codefendant collect money from sales of counterfeit bills. This evidence is sufficient to show that Craig knew about the counterfeiting scheme and permitted the jury to infer that he had the requisite specific intent to commit the substantive offenses and agree to become a member of the conspiracy.
 
 
 21
 The judgment of conviction entered against Craig Griffin in Case No. 85-2003 is affirmed. Case No. 85-1992 is remanded for the trial court to determine whether the statement of coconspirator Gerald Noble was properly admitted against Dorian Griffin.
 
 
 
 [1]
 Dwayne Griffin pleaded guilty to the conspiracy count. The charge against David Griffin was dismissed in exchange for his cooperation with the government