JOSEPH LAURENCE BOSWELL and ROBERT
EDWARD POE *v.* STATE OF
MARYLAND

[No. 138, September Term, 1968.]

*Decided December 30, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas V. Miller, Jr.,* for appellant Poe and *Michael G. Trainer,* with whom was *Philip A. Cole* on the brief, for appellant Boswell.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellants, jointly indicted, were jointly tried and each was found guilty of burglary and grand larceny by a jury in the Circuit Court for Prince George's County. Each was given a 10 year concurrent sentence on each conviction. Separate appeals were filed. Each appellant presents questions relating to the following:

I  The competency of trial counsel.
II  The advisory nature of the instructions of the lower court to the jury as to the presumption of innocence and the burden of proof.

Poe presents a question relating to the following:

III  The absence of counsel at the preliminary hearing.

Boswell presents questions relating to the following:

IV Leading questions propounded by the State.

V Hearsay testimony.

VI The instruction of the jury with respect to recent possession of stolen goods.

We shall lastly consider the questions under I relating to the competency of trial counsel.

## II and VI

The Maryland Rules of Procedure clearly provide: "If a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instructions, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. Opportunity shall be given to make the objection in open court out of the hearing of the jury upon application either orally or in writing, made before or after the conclusion of the charge." Rule 756f. And Rule 756g provides: "Upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of objection were stated at that time." In the instant case the instructions were given prior to the closing arguments of counsel. When the instructions were concluded the court asked the State and defense counsel: "Are there any suggestions for additional instructions or exceptions?" The State replied: "The State has none." Defense counsel replied: "I have none." Therefore the appellants may not assign error in the instructions as of right. But Rule 756g also provides that this Court either of its own motion or upon the suggestions of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused, even though objection was not made. Both appellants suggest plain error material to their rights in the lower court telling the jury that its instructions were advisory only; they claim that the presumption of innocence, the burden on the State to prove guilt and

that guilt must be proved beyond a reasonable doubt are binding on the jury and cannot be disregarded by them. They urge that it was prejudicial error for the court to tell the jury that its instructions with respect to these matters were advisory only. The Constitution of Maryland, Art. XV, § 5 provides that in the trial of all criminal cases the jury shall be judges of law as well as of fact, except that the court may pass upon the sufficiency of the evidence to sustain a conviction. Md. Rule 756b states in relevant part: "The court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and that the court's instructions are advisory only." We cannot construe the constitutional provision to mean that the jury are the judges of some of the law but not all of the law nor can we construe the mandate of the rule so as to permit the court to tell the jury that its instructions with regard to certain laws are binding on them but with regard to other laws are merely advisory. The import of the appellants' contention is that Art. XV, § 5 of the Maryland Constitution, and, thus the rule, violates the federal constitution. In *Slansky v. State,* 192 Md. 94 the Court of Appeals held that the Maryland constitutional provision did not conflict with the Fourteenth Amendment to the Constitution of the United States. In *Giles v. State,* 229 Md. 370, appeal dismissed, 372 U. S. 767, it was held that the provision did not violate the due process and equal protection clause of the federal constitution. The Court, referring to *Slansky* said, at 383, "[W]e were of the opinion then, as we are now, that § 5 of Art. XV is not unconstitutional and that we are not bound, absent a decision of the Supreme Court to the contrary, to follow the rulings in other jurisdictions with respect to similar constitutional provisions in other states, even though some of the cases have held that a state may not permit juries to determine the law in criminal cases without violating the Constitution of the United States." It pointed out that the provision has not been construed as all inclusive and limitations on its scope have been recognized. It noted, at 385: "[W]here full use is made of all presently available safeguards, it may be difficult, in practical operation, to distinguish between the *power* of a jury (under binding instructions) to render a verdict and the *right* of a jury (under ad-

visory instructions) to determine the law for itself in reaching a verdict." See also *Wilson v. State*, 239 Md. 245. We know of no Supreme Court decision to this date holding that a state may not permit juries to be the judges of the law in a criminal case. *Brady v. Maryland*, 373 U. S. 83, without questioning the constitutionality of the Maryland constitutional provision, commented that the provision did not mean precisely what it seems to say, noting, as did the Court of Appeals in *Giles*, the limitations added by the state statute or judicial construction. And it was said in *Wyley v. Warden*, 372 F. 2d 742 (4th Cir. 1967) that not only has the validity of the provision been repeatedly upheld by the Maryland courts, but the Supreme Court of the United States had occasion to consider it and failed to intimate any doubt of its constitutionality. This Court has also upheld the constitutionality of Art. XV, § 5. *Reeves v. State*, 3 Md. App. 195; *Lewis v. State*, 2 Md. App. 678; *Avey v. State*, 1 Md. App. 178, cert. granted and reversed for other reasons, 249 Md. 385. The appellants present no reasons sufficient to persuade us to depart from the precedent so firmly established.

Boswell contends that the lower court committed prejudicial error in the instructions "on the inference arising from recent possession of stolen goods in that the court neglected to include therein the requirement that such possession must be 'exclusive.'" He suggests that we take cognizance of this in the absence of objection under Md. Rule, 1085. We think that Md. Rule 756g is the appropriate rule but we cannot say that the alleged error here was such as this Court should take notice as plain error material to the rights of the appellant. The lower court said in its instructions, "The possession of property recently stolen without giving a satisfactory account of why it is in a person's possession, by that may be inferred either the theft of the property or that it was received knowing it to be stolen." The general rule is that there is an inference of guilt which arises from the possession of recently stolen property. Upon proof of the *corpus delicti,* the inference is strong enough to establish the criminal agency of the possessor of such goods and thus to sustain the conviction. If a burglary is proved to have been recently committed, the inference is that the possessor of goods taken during its commission was the burglar, *Anglin v.*

*State,* 1 Md. App. 85; if a larceny is proved to have been recently committed, the inference is that the possessor of goods taken during its commission was the thief, *Frey v. State,* 3 Md. App. 38; if either a burglary or larceny is proved to have been recently committed and there is credible evidence that another was the burglar or thief, the inference is that the possessor of goods taken during the commission of the crimes was a receiver of stolen goods, *Boblits v. State,* 4 Md. App. 534.[1] Once the inference arises, a burden is cast upon the possessor of such goods to give a reasonable explanation of how it came into his possession. *Debinski v. State,* 194 Md. 355, 360. The constitutional right of a defendant not to incriminate himself and the prohibition against adverse comment and inference from his failure to testify does not protect him from the probative force of the evidence against him. If he does not attempt to rebut the incriminating fact that he was the possessor of property recently stolen, he cannot, merely by remaining silent, escape the natural and reasonable inferences deducible from such fact. Or if he does testify but fails to testify as to how he came into possession of the stolen goods, the trier of fact may draw the adverse inference from his failure to give a reasonable explanation with respect to his possession. 1 *Wharton's Criminal Evidence,* 12th Ed. Anderson, § 146, p. 277. Thus it is relevant for the defendant to offer evidence of facts and circumstances showing that his possession was innocent; for example, that he found the goods, that he came into possession under an honest belief that it belonged to him; that upon discovering the mistake, he had sought out the owner and paid the value of the property or returned the property itself; that he purchased the property. In explaining the possession he may prove from whom he got them and what the parties said at the time. And it is relevant for him to offer evidence of what he said, or what explanation he gave, at the time when he was first found with the property in his possession. 1 *Wharton's Criminal Evidence, supra,* § 204, p. 413. Of course the credibility of the witnesses explaining the defendant's possession of the goods and the weight of the evi-

---

1. For a discussion of the word "recently" as used in the rule see *Anglin v. State, supra,* at 92-93.

dence with respect thereto are matters for the trier of fact as in the proof of any other fact. The inference to be drawn from possession of recently stolen goods is one of fact and it does not in any case raise a presumption of law of the possessor's guilt. See 32 *Am. Jur. Larceny*, § 140, p. 1052.

It appears that the Court of Appeals, in stating the rule, first used the word "exclusive" to characterize the possession of recently stolen goods in *Jordan v. State,* 219 Md. 36 at 46, citing *People v. Galbo,* 112 N. E. 1041, 1044 (N. Y. 1916). In *Jordan* the Court did not expound on the word "exclusive" nor did Judge Cardoza in *Galbo.* In *Butz v. State,* 221 Md. 68 it was contended that the possession was not exclusive. The Court stated the general rule and then said:

> "We shall not labor the appellant's claim that his possession was not 'exclusive' * * * There can be no doubt that where it is shown that the possession was personal and involved a distinct and conscious assertion of possession by the exercise of complete dominion and right of disposal by the defendant, it is 'exclusive' within the rule." pp. 77-78.

In *Anglin v. State,* 244 Md. 652 at 656 the Court used the word "exclusive" in stating the rule but in a number of cases after *Jordan* there was no reference to the requirement of the exclusiveness of the possession.[2] This Court, in stating the rule, has at times used the word "exclusive" as to the possession [3] and at times made no reference to it.[4] We think it clear that to sup-

---

2. See for example: *Bell v. State,* 220 Md. 75; *Oden v. State,* 223 Md. 244; *Glaros v. State,* 223 Md. 272; *Booker v. State,* 225 Md. 183; *Lewis v. State,* 225 Md. 474; *Dyson v. State,* 226 Md. 18; *Ponder v. State,* 227 Md. 570; *Boggs v. State,* 228 Md. 168; *Stapf v. State,* 230 Md. 106; *Brooks v. State,* 235 Md. 23; *Matthews v. State,* 237 Md. 384; *Howard v. State,* 238 Md. 623.

3. See for example: *Gamble v. State,* 2 Md. App. 271; *Frey v. State,* 3 Md. App. 38; *Wilkins v. State,* 4 Md. App. 334; *Grimes v. State,* 4 Md. App. 607; *Burkett v. State,* 5 Md. App. 211.

4. See for example: *McGlothlin v. State,* 1 Md. App. 256; *Musgrove v. State,* 1 Md. App. 540; *Allen v. State,* 2 Md. App. 298; *Bury v. State,* 2 Md. App. 674; *Scott v. State,* 2 Md. App. 705; *Bever v. State,* 4 Md. App. 436; *Fisher v. State,* 5 Md. App. 155; *Jones v. State,* 5 Md. App. 180; *Hale v. State,* 5 Md. App. 205.

port the inference the possession must be personal and with a distinct, implied, or express assertion of property by the exercise of complete dominion and right of disposal. A mere constructive possession is not enough; the accused will not be presumed to have stolen articles which he does not know he possesses. It is in the sense of a personal possession and an assertion of property, express, or implied by the exercise of dominion and right of disposal, that the possession is exclusive. So the possession of stolen property is exclusive if it shows exclusion of all persons who are not parties to the crime, although as to accomplices, the possession of one is the possession of all. See 3 *Underhill's Criminal Evidence* (1957) § 600, p. 1461. Thus, the possession to be exclusive, need not necessarily be in one person and may be a joint possession of several persons. *Grimes v. State,* 4 Md. App. 607. The term "exclusive," like the term "recent" is a relative one, and its meaning as applied to a given case will vary with the circumstances of the case. 1 *Wharton's Criminal Evidence,* 12th Ed., Anderson, § 135, pp. 257-258.

In the instant case we think it clear that the evidence showed that Boswell had personal possession of two shotguns which were recently stolen and that the possession involved a distinct and conscious assertion by the exercise of dominion and right of disposal. There was evidence that Boswell personally presented the guns to a Homer A. Webb and sold them to him. Webb said Boswell told him he was selling them for a friend and Boswell testified that he sold them at the request of a Norman H. Harley. He said Harley went with him to sell the guns but remained outside and was not present at the actual sale. The name of the owner from whom the guns were stolen was engraved on the barrel of one of the guns. Harley was not produced at the trial; Boswell said he did not know Harley's whereabouts at that time. Boswell claims on appeal that as he was selling the guns for a friend, he was an agent and his possession was not exclusive; since there was evidence showing that his possession was not exclusive the lower court erred in omitting the term "exclusive" in instructing the jury. But the evidence relied on by Boswell showed that he had exclusive possession; the guns were in his personal possession and he sold

them. And the jury could have properly found that both Harley and Boswell had possession of the stolen property and this would not compel a finding that the possession in Boswell was not exclusive. Thus as there was evidence sufficient to show exclusive possession in Boswell, it raised the inference that he was the burglar and the thief. The evidence relied on by Boswell was not relevant to the fact of his possession or of its exclusiveness but rather was an explanation of his possession going to his innocence. The lower court correctly instructed the jury as to the inference raised from possession of recently stolen property absent a "satisfactory" explanation. The jury was under no obligation to believe the explanation and did not believe it. In the circumstances here, even if proper objection had been made, we see no reversible error in the failure of the lower court to state that the possession required for the inference must be "exclusive." Md. Rule 756b.

## III

Rickey Searce testified that he lived near the burglarized premises. About 8:30 P.M. on the night of the burglary he saw a truck containing three men pull up to the house of Alejo Lopez. Lopez was not at home. Two of the men ran into the yard and went into the house and the third, identified by Searce as Poe, raised the hood of the truck and stayed near it. Poe sent Searce to the store for cigarettes and when Searce returned he saw the two men "taking stuff out of the house." Thereafter the three men left in the truck with Poe driving. On cross-examination he was asked how the men got in the house and he said, "They had a screwdriver and they picked the lock. His door is all bent up." No objection was made to this in-court identification of Poe.

Poe alleges on appeal that there was a preliminary hearing at which he was not represented by counsel. He claims that the absence of counsel at the preliminary hearing denied him equal protection of the laws as an accused represented by counsel at such a hearing is "given the marked advantage of having available important discovery opportunities as well as the testimony of State witnesses for impeachment." He further claims that the lower court erred in admitting any evidence of identifica-

tion by Searce because he stood alone at the preliminary hearing and was confronted by Searce. He urges that the principles of *United States v. Wade,* 388 U. S. 218 are applicable.

Objection to the in-court identification now challenged was waived by failing to object at the time it was offered. Md. Rules, 522 d 2; 725f. The point not being tried and decided by the lower court, it is not properly before us. Md. Rules, 1085. Further, the basis of the contention now made is what Poe now says occurred at a preliminary hearing. The proceedings at the preliminary hearing, assuming it was held, do not appear in the record before us and in the lack of evidence relating thereto there is nothing for us to review. In any event, assuming *arguendo,* that there was a preliminary hearing, that Poe was not represented by counsel thereat and that he was there confronted by Searce, there is no merit to his contentions. Similar contentions were raised in *Tyler v. State,* 5 Md. App. 265 and considered at length by this Court. We think that *Tyler* is dispositive of questions here presented. We note that the witness here was directly confronted by Poe at the time of the crime and had ample opportunity to observe his features. Considering the questions here raised on their merits, we hold that the lower court did not err in admitting the in-court identification and that the constitutional rights of Poe were not denied in the circumstances here by absence of counsel at a preliminary hearing.

## IV

Rickey Searce was 10 years of age and in the fourth grade of school. No question was raised as to his competency to testify. The capacity of children to testify is within the discretion of the trial court, *Reckard v. State,* 2 Md. App. 312, and we see no abuse of its discretion here. From the record his testimony was clear and coherent; he had no difficulty in recounting what he had observed. Although Boswell claims that he was improperly led by the State, the questions he alleges were leading appear to be two. At the beginning of the substantive part of Searce's testimony he was asked, "And while you were out in the front yard playing did there come a time when you saw a pickup truck drive up?," and he replied, "Yes". Defense counsel objected to the question as leading, saying, "I think he can

ask what he saw." The court said, "There is a little leeway on that when you are dealing with younger people * * *. I don't believe that that necessarily suggests the answer, or would be detrimental to the defendants." The witness thereafter described the truck as a red pickup with a cover in the back and recounted in detail what occurred with regard to the truck and its occupants. The other question specifically challenged now was, "Was it daylight or dark?" and he replied, without objection, that it was dark. Even assuming these questions were leading, the permissibility of leading questions is within the sound discretion of the trial court. We do not believe that there was such an abuse of discretion here as to prejudice the rights of Boswell to a fair trial. See *Hubbard v. State,* 2 Md. App. 364; *Culver v. State,* 1 Md. App. 406.

## V

Immediately after Searce was asked whether it was daylight or dark and had said that it was dark, he was asked, "Do you recall about what time this was?" and he answered "About eight-thirty." On cross-examination he was asked how he knew what time it was. He said his sister told him what time it was when he went in the house. "It was about five minutes ago when I went in, and that was a quarter to nine when I went in." Boswell now claims that the testimony that it was eight-thirty was hearsay and inadmissible. This testimony was admitted without objection and there was no motion to strike it. Boswell correctly says that the time of the commission of the crime was essential to show whether the offense was burglary or a breaking in the daytime. But Searce had testified that the truck was there about 15 minutes and that it was "a quarter to nine when he went in" the house. (On cross-examination he said that the men were there "kind of long" but "not an hour".) We think the evidence established, aside from the precise time, that it was dark when the crime occurred and was sufficient for the jury to find that the breaking and entering were in the nighttime. See *Wiggins v. State,* 4 Md. App. 95, note 9. We think, in any event, that the challenged evidence was harmless as cumulative.

## I

The matter of the incompetency of trial counsel was not tried

and decided below; therefore it is not properly before us. Md. Rule 1085. We have consistently declined to consider that question when raised for the first time on direct appeal. See *Howard v. State,* 3 Md. App. 173; *Thomas v. State,* 2 Md. App. 645; *Jordan v. State,* 2 Md. App. 415. We have repeatedly invoked Md. Rule 1085 because, among other reasons, counsel had no opportunity to defend himself. As we stated in *Harris v. State,* 2 Md. App. 408, 409, our refusal on direct appeal to determine the adequacy of trial counsel does not preclude the appellants from a determination of the matter under procedures available to them. The determination may then be made on factual findings by the lower court upon a hearing at which both the appellants and their trial counsel would be afforded full opportunity to offer evidence and be heard. We think this is the orderly and proper procedure for the fair administration of justice.

*Judgments affirmed as to each appellant.*