## BLAND CALVIN GATEWOOD *v.* STATE
## OF MARYLAND

[No. 44, September Term, 1971.]

*Decided November 9, 1971.*

The cause was argued before ORTH and POWERS, JJ., and THOMAS J. CURLEY, Associate Judge of the District Court — District 7, specially assigned.

*Leonard A. Briscoe* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Joseph Kiel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

The culmination of three separate but related proceedings in the Criminal Court of Baltimore has destined Bland Calvin Gatewood, appellant here, to a period of confinement within the correctional system of Maryland.

In the last of the three, appellant was convicted of perjury in a jury trial before Judge J. Gilbert Prendergast, and sentenced to serve a term of three years.

Along with codefendants Joseph McCloud and Eleanor Janey, appellant pleaded guilty on July 23, 1969, to an indictment charging violation of the lottery laws on September 13, 1968. Sentence for that offense was imposed the same day. Police officers, with a search and seizure warrant, had entered an apartment in Baltimore nominally occupied by McCloud, and there had found and arrested appellant and Eleanor Janey, and had seized numerous records and items of equipment identified as part of a lottery operation. From appellant's person at the time, the police seized $6,182.00 in U. S. currency.

On October 17, 1969, the State filed in the same case a petition for a show cause order under Code, Art. 27, § 264, seeking to have the court declare and order that the $6,182.00 in cash taken from the person of Gatewood was contraband, as a part of a gambling operation, and should be forfeited to the City of Baltimore. A hearing was held on this petition on November 7, 1969. The State's position was placed before the court by way of stipulation. Gatewood, as respondent, was called by his counsel as a witness on his own behalf, and having first been duly sworn, gave testimony which covered over 50 transcript pages in the record of that hearing.

By indictment No. 8193 of 1969, the grand jury of the City of Baltimore charged that appellant committed perjury in the hearing on November 7, 1969, when he "* * * unlawfully and falsely swore that on and about September 13, 1968, he was not involved in the operation of a lottery; that he did not hire Eleanor Mary Janey to work as an employee in a lottery operation; that on and about September 13, 1968, Eleanor Mary Janey was not working for him in a lottery operation; that he had not been to the apartment of Joseph McLeod (sic) on the second floor of 2518 Calverton Heights Avenue prior to September 13, 1968; and that he was spending his days prior to and on September 13, 1968, working for the Boone Fur-

niture Company, the matters so sworn to being material, and the testimony of the said Bland Calvin Gatewood being wilfully and corruptly false * * *".

Trial of the perjury charge was held on March 31st and April 1st, 1970. After evidence that appellant had been duly sworn before he gave his testimony at the forfeiture hearing, the court stenographer who had been present read to the jury practically all of the testimony given at that hearing by appellant. Detective Jack Cook, who had participated in the execution of the search warrant on September 13, 1968, testified concerning what was seen and found in the apartment. Eleanor Janey was called as a witness and she described her employment by appellant to accept numbers bets over the telephone, and said that appellant, and no one else, had been at the McCloud apartment with her every day during the week that she was employed by him.

The defense offered no evidence. Appellant's motion for judgment of acquittal was denied. The jury returned a verdict of guilty. After appellant's motion for a new trial was heard and denied, sentence was imposed. An appeal was taken to this court from the judgment of the trial court.

Appellant makes numerous contentions in his brief on appeal. We shall express our views on each contention made, although not in the order argued in the brief.

## I

Appellant says that his conviction for perjury cannot be permitted to stand, because the alleged perjury occurred in a proceeding in which the court had no jurisdiction. He argues that the Criminal Court of Baltimore lacked jurisdiction to hear the petition for forfeiture for two reasons.

First, he says that the criminal charge had been concluded by a finding of guilty upon a plea of guilty, and judgment thereon. He urges that the matter was concluded, and the State had no power to reopen the case, had no right of appeal, and was estopped by the princi-

ples of *autrefois convict,* double jeopardy, and *res judicata.*

Second, he argues that since the criminal matter was concluded, the only way the State could proceed for a forfeiture would be by a civil *in rem* proceeding, and the Criminal Court of Baltimore had no jurisdiction to try a civil proceeding. Neither of appellant's two attacks on the jurisdiction of the Criminal Court to hear the forfeiture petition has merit. Conclusion of the criminal charge by a judgment of conviction against the accused, far from precluding the subsequent forfeiture proceeding, is a *sine qua non* for such a proceeding. Indeed, the petition may not be filed until after one month from the date of conviction on the criminal charge. Art. 27, § 264 (c). The forfeiture petition is in no way a reopening of the criminal case, but is a subsequent phase of it, civil in form, but in its nature criminal. *Boyd v. United States,* 116 U. S. 616 (1886), *United States v. U. S. Coin & Currency,* 401 U. S. 715 (1971). It is authorized by a special section of the criminal law. Art. 27, § 264. That statute does not require the institution of any separate civil proceeding, but contemplates that the forfeiture proceeding will be a subsequent phase of the same case. It was here conducted under a caption showing the same indictment number as the lottery charge.

Whether the forfeiture proceeding did involve or could have involved any questions of improper reopening of a case, right of appeal in the State, estoppel, *autrefois convict,* double jeopardy, *res judicata,* or the proper form of claiming the forfeiture, is not before us in this appeal from a conviction of perjury. The forfeiture case is no part of this case. The fact that much of the testimony given there was introduced as evidence in this case does not make it so. Other means were available for the correction of any errors there, and whatever errors there may have been may not be attacked collaterally in this case.

There is no merit in any of the reasons advanced by appellant in support of his argument that the alleged

perjury occurred during a proceeding in which the court had no jurisdiction.

## II

Flowing from his premise that there was no jurisdiction in the Criminal Court of Baltimore to entertain the forfeiture petition, appellant says:

a. He was denied due process in this case because the forfeiture hearing was not a legal proceeding, in view of the laws regarding double jeopardy, collateral estoppel, *res judicata, autrefois convict,* and the case had reached a final verdict.

b. He was denied due process in this case because the conviction was based upon a prior conviction at which he was represented by hostile counsel, and he was not represented by competent counsel in the proceedings against him.

c. He was denied due process in this case and denied fundamental fairness because he was trapped by misconduct of the State's Attorney into a proceeding, civil in nature, but criminal in operation, by which the State's Attorney intended to bring about a situation where appellant could be convicted of perjury, as to which he was not advised regarding the legal necessity for appearing at the hearing, was not advised of his right against self-incrimination, and was not advised of his right to remain silent.

d. He was denied his right of trial by jury at the forfeiture hearing.

Each of these contentions of appellant goes to regularity of the proceedings held on the forfeiture petition. As we have said, that proceeding is not subject to collateral attack in the trial of the perjury indictment. Even if it were, no such attack was made by points raised and decided below (Maryland Rule 1085), and the contentions are not before us.

We may observe, however, that we see no trap set for appellant by the State's Attorney. By a perfectly proper proceeding, appellant was confronted with three alter-

natives; to testify truthfully; to testify falsely; or not to testify at all. He chose to testify falsely. He may not complain of the consequences.

### III

Appellant argues that the court erred in failing to instruct the jury with regard to the non-materiality of the alleged false statements.

It is difficult to see how the alleged false statements of appellant, made in his testimony at the forfeiture hearing, could have been more material to the issue being inquired into. The ground upon which forfeiture was sought under Art. 27, § 264, was that the cash taken from appellant's person was contraband, as a part of a gambling operation. Appellant had been arrested in an apartment, where the police found various items of gambling equipment and paraphernalia. Also present was Eleanor Janey, who was shown to have been employed by appellant to accept and record numbers bets over the telephone. He pleaded guilty to the lottery charge. In the forfeiture hearing, he testified that he was not involved in a lottery; that he did not employ Eleanor Janey, and she was not working for him; and that he had not been in the apartment before the day of his arrest there.

The trial judge left the question of materiality to the jury when he said, in his instructions:

> "The essential features of perjury at common law are the wilful making, when under oath in a judicial proceeding or before a Court of justice of a false statement material to the issue or point of inquiry."

After a brief review of the evidence, the court further instructed the jury:

> "This means, of course, the pertinent inquiry is, first, whether he testified falsely at that hearing on November 7, whether he did it willfully and whether or not the testimony was given with

the intent to testify willfully and whether or not the testimony was given with respect to some matter which was material to the issue before Judge Sodaro on November 7 and whether it was such a point of inquiry at that time before that Judge."

Appellant did not except to the instruction given, nor did he except to the failure or refusal of the judge to give any other or different instruction requested by him. Maryland Rule 756 f.

## IV

It is contended that the court erred in failing to grant appellant's request for a change of venue.

A paper entitled "Motion for Change of Venue" was filed by appellant's counsel below on the day of trial, and was called to the attention of the judge before the trial commenced. It was signed by counsel, but not by appellant, and contained no affidavit. Examination of the motion shows that it did not comply with Maryland Rules 738 and 542, relating to removal of causes from one court to another, but in reality was no more than a request that the trial be held before a different judge, rather than in a different court. The only reasons given by counsel were that the State's Attorney "purposely shopped around for a specific Judge", and that he had been denied a request for a postponement.

To the extent that the motion was a request that Judge Prendergast disqualify himself from presiding over the perjury trial, it was a matter for his discretion, and we find no abuse of it. Even if the motion had been in conformity with Maryland Rules 738 and 542, we would find neither abuse of discretion nor error in denying it. *Bromwell and Cornish v. State,* 8 Md. App. 382, 259 A. 2d 577.

## V

Appellant says here that he was not represented by

competent counsel at all stages of the proceedings against him, as required by law.

This question was not raised below, and may not be raised for the first time on appeal. Maryland Rule 1085, *Boswell and Poe v. State,* 5 Md. App. 571, 582, 249 A. 2d 490, *Williams v. State,* 10 Md. App. 570, 578, 271 A. 2d 777.

## VI

Finally, appellant contends that the court erred in failing to grant a judgment of acquittal. He says that the evidence was not sufficient to support the conviction, where the sole witness in contradiction to appellant's statement was an accomplice whose testimony was not corroborated.

The test of the sufficiency of the evidence in a jury case has nowhere been better stated than in *Williams and McClelland v. State,* 5 Md. App. 450, 247 A. 2d 731, where we said, at page 459:

> " * * * the test is whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged."

Applying this test to the evidence before the jury in this case, it is too clear to require discussion that the evidence was sufficient. Appellant raises here, but did not raise below, the contention that the testimony of Eleanor Janey required corroboration, because she was an accomplice. There is no indication whatever in the record that Mrs. Janey was an accomplice with appellant in the commission of the crime of perjury. In any event, there may not be a conviction of perjury on the uncorroborated testimony of one witness alone. The Court of Appeals said in *Brown v. State,* 225 Md. 610, 171 A. 2d 456, at pages 616-617:

> "At common law it was originally held that to

warrant a conviction of perjury the falsity had to be shown by direct and positive testimony of two witnesses. 7 Wigmore, *Evidence*, § 2040 (3rd ed. 1940). The rule has been said to be deeply rooted in past centuries having its inception in the Star Chamber. 7 *id.* §§ 2030 and 2044. Perjury was treated as a high misdemeanor which required a greater measure of proof than any other crime known to law, treason alone excepted.

However, the rule has been relaxed so as to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony. 41 Am. Jur., *Perjury*, § 67; 70 C. J. S., *Perjury*, § 68. The testimony of one witness and other independent corroborative evidence must be of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt. *Weiler v. United States,* 323 U. S. 606; *United States v. Neff,* 212 F. 2d 297; *United States v. Nessanbaum,* 205 F. 2d 93; 70 C. J. S. § 60. It has been held that circumstantial evidence, including documentary evidence, springing from the defendant himself, may take the place of a 'living witness'. (Citations omitted)."

Adequate corroboration of the testimony of Eleanor Janey is found in the testimony of Detective Jack Cook. There was no error in denying the motion for judgment of acquittal.

*Judgment affirmed.*
*Appellant to pay costs.*