### REGINALD C. HILL *v.* STATE OF MARYLAND

[No. 175, September Term, 1968.]

556

*Decided April 23, 1969.*

*Leroy W. Carroll,* with whom was *Milton B. Allen* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barrett W. Freedlander, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant contends that the in-court identifications by two of the State's witnesses were insufficient evidence upon which to base a finding of guilty beyond a reasonable doubt. He was convicted of robbery with a deadly weapon by Judge Meyer M. Cardin in the Criminal Court of Baltimore, sitting without a jury.[1]

---

[1] At the same trial, appellant was also convicted of robbery, assault and burglary on three separate occasions but did not appeal these convictions.

Clifford D. Davis, manager of Murry's Steaks store located in Baltimore City, testified that at approximately 9:10 p.m. on June 29, 1967, as he was preparing to close the store, three men, two of whom were carrying revolvers, and the third wearing a Halloween face mask, entered the store. He stated that the appellant, whom he identified at the trial, placed a gun at his back and forced him to open the safe from which was taken four hundred-sixty three ($463) dollars; that the second man with a gun, whom he later identified as Stephen Williams, forced his assistant, Mrs. Letherberry, and a stock boy to lie on the floor during the robbery; they then were locked in a closet and the robbers escaped.

Mrs. Letherberry took the stand and substantially corroborated Davis' version of the robbery and identified the appellant as one of the robbers.

Although descriptions of the robbers were immediately given to the police by Davis and Mrs. Letherberry, the appellant was not apprehended until November 7, 1967. The appellant was described as being five feet-nine inches tall, weighing approximately 145 pounds, light-complected, and clean-shaven.

In the course of cross-examination, Davis asserted that he had seen the appellant and his confederates approaching the store from a distance of approximately thirty yards over a period of fifteen seconds, and that as the appellant came through the entrance within a foot of Davis he observed the appellant for another three seconds, and "that's the last time I actually saw his face for he kept behind me all the time."

Davis also testified that several months after the holdup, as a result of reading a newspaper article about the arrest of three men suspected of committing another robbery in the area, he and Mrs. Letherberry decided to attend their preliminary hearing, and while waiting in the courtroom for the hearing to begin, they observed the appellant and Williams looking out of a small window in an anteroom. According to Davis, "they [the appellant and Williams] was looking out the window to us. I said 'there they are.' She [Mrs. Letherberry] says 'Yes, there they are.'"

Davis further stated that he and Mrs. Letherberry had testified at the prior, separate trial of Williams involving the same

robbery charge and during the course of the trial had identified him as being one of the robbers. Williams, however, took the stand as a witness for the appellant and asserted that he was acquitted of the robbery charge, notwithstanding the courtroom identifications by Davis and Mrs. Letherberry, since he was able to show that he had been hospitalized at the time of the robbery.

The appellant took the stand, denied participating in the robbery, and stated that he was wearing the same type of moustache on the day of the crime as he was wearing at trial. He conceded that he had been previously convicted of larceny on two separate occasions.

The appellant does not argue that the formal mandates of *United States v. Wade*, 388 U. S. 218, and *Gilbert v. California*, 388 U. S. 263, have any direct application here but he does urge that the identifications of the appellant as one of the robbers by the State's witnesses were so inherently weak as to be incredible. He points out that the witnesses were clearly mistaken in their identification of Williams as demonstrated by his acquittal; that Davis had only eighteen seconds, by his own admission, to observe the appellant; that he and Mrs. Letherberry described the appellant as clean-shaven, whereas the appellant testified that he had a moustache and at the time of the trial was wearing a moustache; and that Davis, after looking at hundreds of so-called "mug shots" shortly after the robbery picked out an individual that Davis said "resembled" the appellant but it turned out to be the picture of someone else.

While there can be no question that these factors went to the credibility of the identifications by the State's witnesses, we cannot say that they are so demonstratively devastating as to compel us to hold that the trial judge was clearly erroneous in relying upon the identification evidence to find a verdict of guilty. It does not follow from the fact that the witnesses apparently were mistaken in their identification of Williams, that inexorably, they were mistaken in their identification of the appellant. We cannot say, under the circumstances of this case, that eighteen seconds was not sufficient time for the witness, Davis, to comprehend and remember identifying features of the appellant. Likewise, the trial judge was not required to believe the

appellant's denial of participation in the robbery or his assertion that he was wearing a moustache at that time. *Richardson v. State,* 5 Md. App. 719; *Logan v. State,* 1 Md. App. 213.

It has long been the established law of this State that the weight of the evidence and the credibility of the witnesses making in-court identifications are for the trier of facts. *Harris v. State,* 6 Md. App. 7, 22; *Melia and Shelhorse v. State,* 5 Md. App. 354, 366; *Dortch and Garnett v. State,* 1 Md. App. 173, 177. This principle was recently approved by the Supreme Court of the United States in *Foster v. California,* 5 CrL 3001 (U. S. April 1, 1969), where Mr. Justice Fortas, speaking for a majority of the Court stated (Footnote 2) :

> "The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. But it is the teaching of *Wade, Gilbert,* and *Stovall, supra,* that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law."

In *Foster,* the Court had before it evidence of two lineups and a "one to one confrontation." Under the peculiar factual situation there presented, it was concluded that "this case presents a compelling example of unfair lineup procedures." The factual posture of the case at bar bears no resemblance to the identification procedures followed in *Foster.* And we find nothing in the identification procedures here to be so defective as to make the identifications constitutionally inadmissible as a matter of law.

We cannot say that the trial judge failed to take into consideration all of the arguments advanced by the appellant attacking the credibility and reliability of the State's identification witnesses. It is not the function of this Court to substitute its judgment for that of the trier of facts in determining the weight to be given the evidence, which was properly admitted. We cannot say that the judgment of the lower court, based on this evidence, was clearly erroneous. Md. Rule 1086.

*Judgment affirmed.*