## BLAND CALVIN GATEWOOD *v.* STATE OF MARYLAND

[No. 682, September Term, 1971.]

*Decided June 5, 1972.*

The cause was argued before MURPHY, C. J., and POWERS and CARTER, JJ.

*Leonard A. Briscoe* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Charles O. Fisher, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Appellant was indicted on October 6, 1970 by the grand jury for the City of Baltimore in four counts, charging that he did on September 16, 1970:

1. Unlawfully sell a lottery ticket to an unknown person.
2. Unlawfully keep a room at 4115 Groveland Avenue for the purpose of selling lottery tickets.
3. Unlawfully and knowingly permit a room at 4115 Groveland Avenue, of which he was the owner, to be used as a place for selling lottery tickets.
4. Unlawfully have in his possession certain lottery paraphernalia.

To the indictment was attached an addendum warning appellant that he had formerly been convicted of a violation of the lottery laws, that the State intended to prosecute him as a subsequent offender, and of the maximum punishment if he should be convicted of the current offense and found to be a subsequent offender. See Code, Art. 27, § 366, *Gatewood v. State*, 244 Md. 609, 224 A. 2d 677, *Ware v. State*, 13 Md. App. 302, 283 A. 2d 177, Maryland Rule 713.

Upon arraignment before Judge Basil Thomas in the Criminal Court of Baltimore on September 21, 1971, appellant pleaded not guilty, waived a jury trial and asked to be tried by the court. Appellant stipulated as to the State's case, reserving the right to take the stand and to call witnesses. He elected to reserve the issue of whether he was a subsequent offender until the determination of the main case.

The Assistant State's Attorney outlined to the court what the testimony of the State's witnesses would be if they were called. Appellant moved for a judgment of acquittal. The motion was denied. No further evidence was offered. The court announced that the case would be held *sub curia*.

Three days later when the case was called for further proceedings, Judge Thomas entered a finding of guilty under the fourth count of the indictment. Appel-

lant filed a motion for a new trial and asked to be heard at that time. The motion was heard and denied. The State then called up the addendum, to which appellant pleaded "not guilty". A statement of facts concerning the prior conviction was given to the court by stipulation, and the court determined that appellant was a subsequent offender.

Judge Thomas then afforded the opportunity to make a statement and to present information in mitigation of punishment. Maryland Rule 761 a. In the course of his statement, appellant's counsel said:

> "Now, in my discussions with the State's Attorney on this case—first of all, there hasn't been any plea bargaining as such, but we did go on an agreed statement of facts, and it was my understanding that they would not press for a jail term in this case. I understand this is [not] binding on the Court, but in our discussions, however, I want the Court to know about this."

The Assistant State's Attorney present on that occasion was not the same Assistant who had been present at the trial itself. The following then occurred:

> "MR. SIMONSON: Your Honor, Mr. Briscoe said that he was under the impression that the State was not going to press for a jail sentence. To be perfectly candid with the Court, I know nothing about this. I prefer to withhold any recommendation until I have an opportunity to consider with my colleague who handled this case—
>
> THE COURT: Well, it was a not-guilty plea anyway, and it would seem to me that wouldn't be binding on the Court. There wasn't a guilty plea in this case where the defendant was induced to plead guilty because there were some promises made to him.

454

MR. BRISCOE: This isn't what we are claiming.

THE COURT: What are you claiming, Mr. Briscoe?

MR. BRISCOE: I am claiming previously what I said—

THE COURT: What is that?

MR. BRISCOE: —that we had agreed to go on a statement of facts in this case, and the State—I had discussed this with Mr. Fisher, the State's Attorney who tried the case. I wouldn't stand here and tell the Court I did if I didn't. And it was my impression that if we went on the statement of facts and got the case over with, that they would not press for a jail sentence, and I am simply giving the Court that information for what it is worth.

THE COURT: That does not mean—in other words, they wouldn't make any statement at all with respect to a jail sentence?

MR. BRISCOE: Right—this is true.

MR. SIMONSON: As I say, I know nothing about that, but I will stand mute, anyway."

The court requested information concerning appellant's background. After a recess this was supplied by Mr. Simonson, including the following:

"Your Honor, also in 1970, or early '71, I'm not sure of the exact date, the defendant was found guilty of perjury. That case is on appeal, however.

MR. BRISCOE: Yes, sir, it is on appeal.

MR. SIMONSON: In front of Judge Prendergast—found guilty of perjury in front of Judge Prendergast.

MR. BRISCOE: First of all, that case is on appeal, your Honor. I understand there is a very good possibility—it is being argued before the Special Court of Appeals.

THE COURT: It is on appeal? If it is a good possibility or bad, we will find out." [1]

After a further statement by appellant's counsel in mitigation, Judge Thomas imposed a sentence of four years under the jurisdiction of the Department of Correctional Services and a fine of five thousand dollars and costs. On the same day an appeal was entered.

While this appeal was pending, appellant filed in the lower court on October 20, 1971, a paper which he titled, "Motion In Arrest Of Judgment And For Appropriate Relief Or For Reconsideration Of Sentence". This motion came to the attention of Judge Thomas on November 11, 1971. The State moved to dismiss on the grounds that the Rules do not provide for any such motion and that because an appeal was pending the court had no further jurisdiction in the case.

After allowing appellant's counsel wide latitude in arguing for relief from the conviction and sentence, Judge Thomas said:

> "Let me say that I think that your motion for arrest of judgment and appropriate relief and for reconsideration of sentence, all being filed after the appeal has been taken, is not seasonably filed."

The court further said:

> "I am totally unimpressed with this motion, and I say that I don't think it is a proper one to file at this time when an appeal is pending, but even if it is proper, I find no basis for it, and would certainly deny the motion."

We agree that the motion was not properly before the lower court, and the proceedings on it will not be considered in this appeal.

---

1. See *Gatewood v. State*, 13 Md. App. 317, 283 A. 2d 193, in which we affirmed the perjury conviction, and our subsequent opinion in the same case upon reconsideration after remand by the Court of Appeals without affirmance or reversal, *Gatewood v. State*, 15 Md. App. 314, 290 A. 2d 551, in which we reversed the perjury conviction.

Appellant asks us to consider:

1. Whether he was denied due process and equal protection of the laws by having the court advised prior to trial that he was to be tried also on an addendum, thereby prejudicing his right to a fair trial.

2. Whether he was denied due process and equal protection of the laws by foregoing valuable rights in contemplation of a recommendation of a fine only, where Assistant State's Attorneys then failed to make such recommendation and denied that there had been negotiations.

3. Whether the evidence in this case was sufficient to support the conviction.

4. Whether he was denied fundamental due process and equal protection of the laws when the court was informed at his sentence hearing that appellant had been convicted of perjury.

### 1.

The contention that appellant's right to a fair trial was prejudiced because the judge was made aware, before trial, that there was a subsequent offender addendum attached to the indictment, is entirely without merit. Maryland Rule 713 permits the defendant, upon arraignment, to elect to have the subsequent offender issue determined after conviction. In the absence of such an election the issue is to be determined concurrently with the issue of guilt of the current offense.

We cannot see how the pendency of two accusations, neither yet proved, could prejudice the mind of a trial judge when the pendency of one accusation would not. *State v. Hutchinson,* 260 Md. 227, 271 A. 2d 641. Nor can we see how a defendant could make the required election without the knowledge of the court. Appellant's right to a fair trial was not prejudiced.

### 2.

Appellant's second contention must be based upon a misreading of the transcript, and is groundless. What

we have quoted above shows that when appellant's counsel asserted an "understanding" with a different Assistant State's Attorney, the Assistant then present, far from denying that there had been "negotiations", merely said that he knew nothing about them, and wanted to confer with his colleague, but thereafter said, "I will stand mute, anyway." He did so. He made no recommendation. Appellant now attempts to pervert what he described below as an "understanding that they would not press for a jail term" into an understanding that the State would recommend a fine only. He made no such assertion below, and the record shows his present position to be erroneous.

Even if we assume that the "understanding" asserted below was in fact reached, and that fairness requires that a promise made under such circumstances must be fulfilled (Cf. *Santobello v. New York,* 404 U. S. 257, 30 L.Ed.2d 427, 92 S. Ct. 495), the record shows that the State did in fact fulfill it.

### 3.

In *Williams v. State,* 7 Md. App. 5, 252 A. 2d 880, we discussed the applicable law and the evidence upon which appellants in that case were convicted in the trial court of possession of lottery slips. After noting the dictionary definition of "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal", we said, at page 17:

> "Considering the evidence before the court, including the places where the lottery slips were found, we do not believe that it showed directly or supported a rational inference that the appellants had constructive possession of the lottery slips or that they had obtained a measure of control or dominion over the custody of the slips. Thus the lower court could not be fairly convinced beyond a reasonable doubt of the appellants' guilt of the offense charged in the 4th count."

The undisputed facts before the lower court in the present case lead us to conclude that the evidence was legally sufficient to show directly or support a rational inference that the lottery paraphernalia was, at least constructively, in appellant's possession.

As Chief Judge Murphy said for this Court in *Coleman v. State*, 4 Md. App. 386, 243 A. 2d 24, at page 391:

> "Since the instant case was tried by the court sitting without a jury, we may review the case upon both the law and the evidence, but cannot set aside the judgment of the lower court on the evidence unless clearly erroneous, giving due regard to the opportunity of the lower court to judge the credibility of the witnesses. Maryland Rule 1086. We do not, therefore, determine whether the defendant was guilty beyond a reasonable doubt; our function is to determine whether there was any evidence, or proper inferences from the evidence, upon which the trial court could find the defendant guilty beyond a reasonable doubt, and if the record shows such evidence, or proper inferences, we cannot find that the decision was clearly erroneous."

The evidence, which was uncontroverted, showed that on September 15, 1970 a police officer parked so as to observe the premises at 4115 Groveland Avenue. He saw appellant drive up in a 1969 Chevrolet sedan with a woman passenger, and park nearby. Both walked past the officer as they approached the rear of the premises, went up the rear stairs to the third floor, and entered. They had not emerged when the officer left 30 minutes later. As they walked past the officer he overheard them talking—"the conversation was related to lottery and referred to straightening out numbers when we get upstairs".

A search warrant was obtained for the premises and

for the described automobile. It was executed on September 16, 1970. Its validity is not questioned.

As several officers arrived at the premises to execute the warrant, the same automobile was observed, parked in front of the premises. One of the officers saw appellant go up the "fire escape" at the rear of the premises and enter the premises at the third floor. The officers entered the third floor rear, after breaking down the door. There they found another man, and numerous lottery tickets and other paraphernalia. They did not find appellant, but did find interior stairways leading to other apartments in the building.

The described vehicle was then searched. In the glove compartment were numerous lottery slips and other records relating to lottery, a pair of sunglasses with the name Bland Gatewood stamped on the frame, and personal papers in the name of Bland Gatewood. The automobile was registered to one Bernice Virginia Glenn, not otherwise identified.

We cannot say that the trial judge was clearly in error when he deemed it rational to infer, based upon this evidence, that appellant constructively possessed this lottery paraphernalia by having it in his control or at his disposal.

### 4.

At the time Judge Thomas imposed the sentence in this case, he said:

> "The defendant has a record and a history of involvement in violation of the lottery laws. Apparently, he hasn't learned his lesson, and he was—I note that in 1942, he was convicted of lottery, in '57 for carrying a deadly weapon, in '67 he was given a four-year suspended term for bookmaking, which seems to be a fairly serious charge in this case—and in '69 he was given six months and a fine. Apparently he has not learned his lesson.

From all the facts in this case, it would seem that he was involved, at least, in a substantial and large lottery operation.

From all the facts of this case, from the history of this defendant, the Court feels that a substantial period of incarceration is called for.

The sentence of this Court, therefore, is four years under the jurisdiction of the Department of Correctional Services accounting from this date—he has been on bail?

MR. BRISCOE: Yes, your Honor.

THE COURT: Counting from this date— and a fine of five thousand dollars and costs."

When the perjury conviction was mentioned by the Assistant State's Attorney at the sentencing, he pointed out that the case was on appeal. Appellant made no objection, and sought only to make sure that the judge was aware of the pending appeal.

We said in *Bryson v. State,* 7 Md. App. 353, 255 A. 2d 469, at page 355:

"The imposition of a sentence in a criminal trial is a matter that is peculiarly within the province of the trial judge, *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336. The trial judge is not limited by strict rules of evidence in his presentence investigation, which includes examination of the person's reputation, past offenses, habits, health, and the like, *Baker v. State, supra* [3 Md. App. 251, 238 A. 2d 561] at 257."

Again, we said in *Mahoney v. State,* 13 Md. App. 105, 281 A. 2d 421, at page 112:

"We have held that the matter of sentencing within the limits of the law is peculiar to the trial judge and will not be reviewed by this Court unless dictated by passion, prejudice, ill-will, or other unworthy motive."

The Supreme Court of the United States, in *United States v. Tucker*, 404 U. S. 443, 30 L.Ed.2d 592, 92 S. Ct. 589, after referring in similar terms to the wide discretion reposed in a trial judge in determining sentence, said:

"But these general propositions do not decide the case before us. For we deal here not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. As in Townsend v. Burke, 334 U. S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252, 'this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.' Id., at 741, 92 L. Ed. at 1693. The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional under Gideon v. Wainwright, 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733.

We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would necessarily have been different if he had had the help of a lawyer. Such speculation is not only fruitless, but quite beside the point. For the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.

We agree with the Court of Appeals that the

answer to this question must be 'yes.' For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding."

Here we are not confronted with the use of a prior conviction without counsel against a person to enhance punishment, forbidden by *Burgett v. Texas*, 389 U. S. 109, 19 L.Ed.2d 319, 88 S. Ct. 258, as eroding the principle of *Gideon v. Wainwright*, 372 U. S. 335, 9 L.Ed.2d 799, 83 S. Ct. 792. Nor was there here a violation of Code, Art. 35, § 10, which deals with the admissibility of evidence.

It is apparent from the remarks of Judge Thomas, quoted above, that the reference to the perjury conviction pending on appeal was not considered by him, and had no effect in enhancing punishment.

*Judgment affirmed.*
*Appellant to pay costs.*