## MICHAEL WARREN SCHUMAN *v.* STATE OF MARYLAND

[No. 167, September Term, 1973.]

*Decided November 26, 1973.*

The cause was argued before GILBERT, MENCHINE and LOWE, JJ.

*Arnold Zerwitz,* with whom was *Willard R. Smullian* on the brief, for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Allen N. Horvitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, Michael Warren Schuman, was convicted in a non-jury trial in the Criminal Court of Baltimore by Judge Shirley B. Jones of violating Md. Ann. Code Art. 38A, § 27A, which section mandates:

> "No person shall possess any explosives other than smokeless powder and explosives necessary for the manufacture of ammunition for small arms [1] unless he has obtained a license to manufacture, deal in or possess such explosives pursuant to the provisions of § 28 of this subtitle." [2]

The record reveals that the appellant was introduced to Detective Gerald Brown of the Baltimore County Police Department Bomb Squad on the night of August 3, 1972 by an informant. The detective, working undercover and acting on previous information, sought to obtain explosives or guns from the appellant. The officer indicated to appellant that he

---

[1] Possession of "smokeless powder or other explosives necessary for the manufacture of ammunition for small arms" is proscribed by the provisions of Md. Ann. Code Art. 38A, § 27B unless a license has been obtained pursuant to § 28 of the same article.

[2] § 28 prescribes the methods for obtaining licenses.

possessed "firing devices" and the appellant expressed an interest in acquiring some of them. The appellant asked Detective Brown if he would consider a trade of some "grenades" for the "firing devices" and when the detective responded in the affirmative, the appellant left Merritt Point Park, where the two had met, and returned approximately an hour later. At that time the appellant produced two tubular, cardboard containers in which were military type tear gas or "CS" grenades. Detective Brown then identified himself as a police officer and arrested the appellant. The appellant, after being removed to Baltimore County Police Headquarters, executed a consent to a search of his residence which was located in Baltimore City. The next day, August 4, 1972, a search of the appellant's dwelling was performed by the Baltimore City police officers.[3]

A forensic chemist of the Department of the Treasury, Internal Revenue Service, Alcohol, Tobacco and Firearms Division, testified *inter alia* that he had analyzed the contents of the various chemicals possessed by the appellant and that a combination of two or three of some of them could produce low order explosives, high order explosives, poisonous gas or incendiaries as well as irritants similar to

---

3. The following items were recovered: Five (5) lb. jar Potassium Chlorate; Five (5) lb. can Manganese Dioxide; One (1) lb. jar Potassium Cyanide; One (1) lb. jar Potassium Nitrate; One (1) lb. jar Potassium Chloride; One (1) lb. jar Sodium Carbonate; One (1) lb. jar Calcium Oxide; One (1) lb. jar Sodium Thiosulfate; One (1) lb. jar Ammonium Oxalate; One (1) lb. jar Sodium Hydroxide; One (1) lb. jar Potassium Permanganate; One (1) lb. plastic jar Magnesium Sulfate; Ten (10) oz. plastic jar Sublimed Sulfur; One (1) lb. jar Lead Nitrate; Four (4) lb. jar Sodium Hydrogen Phosphate; 1/4 lb. can Phosphorus; One (1) lb. jar Mercuric Oxide, Red; Small jar powdered nickel metal; Small jar Copper Sulfate; Small jar Silver Nitrate; Three (3) small jars powdered charcoal; One (1) jar ash soda; Small jar Ferric Oxide; Four (4) oz. jar iodine crystals; Two (2) jars mercury liquid; One jar uranium ore U; One (1) oz. coil of purified magnesium. Also recovered were: four (4) tear gas grenades; two (2) smoke grenades; a fuse for use in an antipersonnel mine; two grenade launchers; miscellaneous small arms ammunition; a fuse for model rockets; an "M-60 waterproof fuse lighter" that could be attached to a safety fuse for setting off dynamite or other high explosives; United States Army field manuals entitled "FM 23-30 Grenades and Pyrotechnics"; "FM 5-31 Booby Traps"; "FM 5-25 Explosives and Demolition"; and a United States Army technical manual "TM 9-1375-200 Demolition Material"; a "Star Cluster Flare"; Eye pieces and filters for an Army style gas mask; deactivated fuse; nuclear calculator; and the flag of the former "Third Reich" bearing the familiar swastika.

tear gas or orthochlorobenzalmalononitrile, — a chemical irritant which produces the "punishing reaction" of nausea.

The smoke grenades contained detonators. The detonators are used to trigger the chemical compounds present in the container so as to produce the smoke. The detonators themselves contained a burning mixture and an explosive. Appellant testified that while in the military service he was assigned to the Chemical Warfare Corps, but even before that time he had developed an interest in the collection of military type weapons.[4] He denied possession of the chemicals for the purpose of manufacturing bombs or other high explosives, although he did acknowledge that he had made a black-powder bomb which he had detonated in Patterson Park.

In this Court appellant contends that the sum total of the evidence adduced by the State falls short of meeting the definition of "Explosives" as set forth in Md. Ann. Code Art. 38A, § 26 (a). That section provides:

> " 'Explosives' means gunpowder, powders for blasting, high 'explosives' blasting materials, fuses (other than electric circuit breakers), *detonators* and other detonating agents, smokeless powder and *any chemical compound* or *any mechanical mixture containing any oxidizing and combustible units*, or *other ingredients in such proportions, quantities, or packing that ignition by fire, friction, concussion, percussion or detonation of any part thereof may and is intended to cause an explosion*, but shall not include fixed ammunition for small arms, firecrackers [5] or matches." (Emphasis supplied).

Judge Jones found that the detonators which had been an integral part of the smoke grenades were "live detonators" and that those detonators fell within the meaning of that word, as utilized in Md. Ann. Code Art. 38A, § 26 (a). She

---

4. Appellant's actual service extended from June 9, 1970 to August 27, 1971.

5. The manufacture, sale, possession or discharge of firecrackers is regulated by the provisions of Md. Ann. Code Art. 38A, §§ 15-25.

reasoned that had the legislature seen "fit to exempt or exclude detonators which were attached to a grenade or attached to anything else", they would have done so. We agree. Moreover, we opine that the chemical substances possessed by the appellant were of such a nature and quantity as to fall within the proscribed "chemical compounds", "mechanical mixture", or "other ingredients" prohibited by the legislature. The possession of the chemicals, in the quantity presented in this case, by an individual, *sans* license, gives rise to a rational inference that the possessor maintains and controls such chemicals for an illicit purpose, to wit, the making of explosives.

Statutes banning the possession of explosives, while they are to be strictly construed, are nevertheless to be interpreted so as to effectuate the legislative purpose, 35 C.J.S. *Explosives* § 12b (1960). The General Assembly set forth in the preamble to Laws of 1970, Ch. 404, its legislative purpose. It said in pertinent part that it intended:

> "   . . . to increase the penalties for manufacturing, dealing in or possessing certain explosives without a license; to change and supplement the reasons for which a license to manufacture, deal in or possess explosives shall be denied; . . . to make it a crime under certain circumstances to aid, counsel or otherwise further or conspire in a violation of the law prohibiting unlicensed possession of explosives: . . . "
> (Emphasis omitted).

We glean from the avowed legislative purpose that the possession of the chemical compounds in such quantities as the appellant had was clearly violative of Md. Ann. Code Art. 38A, § 27A.

Appellant next argues that he should have been found not guilty because he was entrapped. Generally, however, the defense of entrapment is not available to an accused where the law enforcement officer, acting in good faith for the purpose of discovering or detecting crime, merely supplied the opportunity for the commission of the crime to one who

already possessed the requisite criminal intent. *Rettman v. State,* 15 Md. App. 666, 670, 292 A. 2d 107, 109 (1972). *See also Baxter v. State,* 223 Md. 495, 165 A. 2d 469 (1960), *cert. denied,* 366 U. S. 968, 81 S. Ct. 1930, 6 L. Ed. 2d 1258 (1961); *Ferraro v. State,* 200 Md. 274, 89 A. 2d 628 (1952); *Simmons v. State,* 8 Md. App. 355, 259 A. 2d 814 (1969).

The question as to whether or not appellant was entrapped by Detective Brown in Baltimore County is irrelevant in this case. The search of the appellant's residence in Baltimore City was conducted pursuant to his consent, and it is the fruit of that search that sustains the conviction.

*Judgment affirmed.*