# DAVID ROSS *v.* STATE OF MARYLAND

[No. 114, September Term, 1974.]

*Decided January 13, 1975.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*John M. Morse, Assigned Public Defender,* for appellant.

*George A. Eichhorn, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, James L. Bundy, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Frank A. Sauer, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court. MOORE, J., dissents and filed a dissenting opinion at page 260 *infra.*

The appellant, David Ross, and a codefendant, Clarence Johnson Marable, were jointly tried under separate indictments charging them with unlawful distribution of heroin, with possession and with conspiracy. A jury in the Criminal Court of Baltimore, presided over by Judge J. William Hinkel, convicted appellant of unlawful distribution. The jury, however, was unable to reach a verdict with respect to the charge of conspiracy against appellant or any of the charges against his codefendant. As

to those offenses upon which the jury did not agree, the court declared a mistrial. Appellant was thereafter sentenced to a term of seven years.

Appellant assigns four reasons why the judgment should be reversed: (1) the trial court improperly answered in the negative a question from the jury as to whether, after resuming deliberations under the remaining counts, it was permissible to reconsider appellant's conviction under the distribution count; (2) the evidence was insufficient to sustain a conviction; (3) the admission into evidence of testimony by an informer relating to past sales of narcotics in which he and appellant had participated constituted reversible error; (4) appellant was entrapped by the police through the agency of the informer.

The State's case against appellant was presented through three witnesses — a paid informer for the federal Government, a detective from the Narcotics Unit of the Baltimore City Police Department detailed to the Drug Administration Task Force, and a Forensic Chemist with the Bureau of Narcotics and Dangerous Drugs.

Their combined testimony developed that on the evening of February 6, 1973, the informer, Stephen Brown, was working for federal agents in the vicinity of the 1500 block of Pennsylvania Avenue in Baltimore. Brown had twice been admitted to Patuxent Institution from which he was on parole. Released from Patuxent in February, 1972, he began his employment with federal narcotics agents in November, 1972. He testified that he had $150 of government funds in his possession and approached appellant, stating he wanted to "get a bundle of narcotics." Appellant went into a nearby bar and the informer placed a telephone call to Detective Robert Murray. Appellant emerged from the bar with a cab driver who transported appellant and the informer to Catherine and Lombard Streets. The informer testified that during the trip he paid the entire $150 cash to appellant. The latter went into the residence of his codefendant, and the informer awaited his return. Detective Murray was in an unmarked car parked some 150 feet away. When appellant

returned and delivered a package to the informer, appellant was arrested. The informer was placed in another vehicle. The package was later found to contain 25 glassine bags of heroin. The Forensic Chemist testified that the substance tested to 1.7%.

Both appellant and his codefendant testified in their own defense and both denied the alleged "buy." Appellant testified on direct examination that he had been incarcerated with the informer in Hagerstown in 1962, and that he had heard Brown was an informer but "was not sure." On cross-examination, it was established that although the appellant had prior convictions for larceny and unauthorized use, he had not been convicted for drug-related offenses. The codefendant had a record for larceny and possession of narcotics. He described himself as a "former addict." The codefendant denied that, when the police went to his premises, he disposed of the $150 in the toilet. The money was never found.

## I.

After deliberating for approximately three and one-half hours, during which there was a request to the court for a definition of circumstantial evidence, with which the court complied, the jury returned and the following transpired:

"THE CLERK: Members of the jury, have you agreed upon your verdicts?

THE JURY IN UNISON: Yes, we have.

THE CLERK: And who shall say for you?

THE JURY IN UNISON: Our foreman.

THE CLERK: Mr. Foreman, would you stand, please. How say you as to Indictment 17301335, is David Ross guilty of the matters wherein he stands indicted as to the First Count, possession with intent to distribute, guilty or not guilty?

THE FOREMAN: Guilty.

THE CLERK: How say you as to Indictment 17301337 charging conspiracy, guilty or not guilty?

THE FOREMAN: Haven't reached a verdict.

\* \* \*

THE COURT: Gentlemen, you have heard the statement by the foreman, the jury has agreed upon a verdict as to the First Count of the Indictment.

MR. HARRIS [defense counsel]: *If your Honor please, I would ask that the jury be polled as to the First Count."* (Emphasis supplied).

The response of each juror sustained the verdict as announced by the foreman. The court then noted that, as to appellant, there remained only the conspiracy charge. Under both indictments the jury had been unable to reach a verdict on the culpability or non-culpability of the codefendant. Without any intervening objection, the jury was then given a version of the *Allen* [1] charge and instructed to resume deliberations. Soon thereafter, the foreman sent out the question, "What does the term 'judge the law' mean? ", to which the court responded. A short time later, the foreman transmitted another question: "Can a guilty determination be reversed at this point in the trial? " The Court answered "No". No objection was made by defense counsel. The jury later returned and indicated it was still unable to reach a verdict on the conspiracy charge or any charge against the codefendant.

Appellant contends that the court was wrong in instructing the jury it could not reverse its finding of guilty

---

1. The term is derived from Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896) although the charge itself apparently originated in Commonwealth v. Tuey, 8 Cush. 1 (Mass. 1851).

because "at no time was the jury hearkened." He cites *Givens v. State,* 76 Md. 485, 25 A. 689 (1893) as establishing the rule that the jury must reaffirm its verdict by the procedure of hearkening before the verdict can properly be considered final. He concedes that, as with other instances of failure to object, a failure to object to the omission of the hearkening procedure results in a waiver of the trial defect, *Glickman v. State,* 190 Md. 516, 60 A. 2d 216 (1948); and that a jury poll "also serve[s] the purpose of verifying the unanimity of the jury verdict." Appellant insists, nevertheless, that in "the totality of the circumstances" presented, the omission of hearkening deprived the jury verdict of finality, although the only "circumstance" he notes is that the jury later asked if it could change a guilty verdict.

We observe that no objection was made by defense counsel when the court indicated its intention to instruct the jury that it could not change its verdict. As a preliminary matter we must decide whether, even assuming plain error material to appellant's rights, Md. Rule 756 g, we may take cognizance of the error in the absence of an objection. *Ibid.* Such a decision involves a determination of whether the putative error was one of commission or omission. *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62, *cert. denied* 265 Md. 736 (1972). The transcript contains the following:

"THE COURT: The jury has sent out another question. It says, 'Can a guilty determination be reversed at this point in the trial? The answer is 'no.'
(The answer *was sent to the jury,* after which [the jury returned with its verdict].) " (Emphasis supplied).

The *Brown* distinction between errors of commission and of omission in jury instructions is that in the former "the damage has been done," or may well have been, so that

corrective instructions would be of dubious value. Where nothing has been said to the jury on the point in issue, however, *Brown* construed Rule 756 g to impose an absolute burden upon the dissatisfied party to alert the court to the defect in its instructions. The error alleged here, had error indeed occurred, would have been one of commission.

In *Brown* we pointed out that even where there has been an error of commission, plain and material to the rights of the accused, that "the exercise of our discretion to correct it should be limited to those cases in which correction is necessary to serve the ends of fundamental fairness and substantial justice." Since the finality of the verdict is a significant issue in this case we shall consider whether the court's instruction to the jury that its verdict was final and irreversible was correct. We hold that it was for the reasons stated *infra*.

With some local variations in Maryland, the reply of the foreman as to whether the defendant is guilty or not guilty is noted by the clerk and *recorded* on the docket or upon such other records as may be used preparatory to the completion of the formal docket entries. According to Hochheimer, *Crimes and Criminal Procedure* (1897), § 327, the formal mode for hearkening is as follows:

> "Hearken to your verdict as the court hath recorded it. You say that A.B. is guilty (or not guilty) of the felony (or, treason) whereof he stands indicted: so you say all."

The common law procedure is explained in *Grant v. State*, 33 Fla. 291, 14 So. 757 (1894) wherein the court said:

> "By the common-law procedure, . . . the verdict of the jury was orally pronounced in open court, then recorded by the clerk, and affirmed by the jury, which was done by that officer saying to them to hearken to their verdict as recorded by the court, and repeating to them what had been taken down for record."

In Maryland an accused has an absolute right to have the jury polled, a right of constitutional dimension insofar as it serves to assure him his right under the Maryland Constitution to be convicted only upon a unanimous verdict.[2] The only limitation upon the right is that it be exercised after the verdict and before the jury is discharged. *Maloney v. State,* 17 Md. App. 609, 304 A. 2d 260 (1973).

Md. Rule 758 d provides as follows:

> "When a verdict is returned and before the jury is discharged it shall be polled at the request of a party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."

Prior to the effective date of Md. Rule 758 d, *viz* January 1, 1957, it was evidently thought necessary that the accused request a poll of the jury *prior* to the recording of the verdict and the hearkening of the jury. Thus in *Ford v. State,* 12 Md. 514, 546-547 (1859) the Court of Appeals said:

> " . . . [W]e here remark, that when the jury be asked if they have agreed on their verdict, and they respond that they have, and that their foreman shall say for them, and the foreman, *speaking for the whole panel,* find a proper verdict, and the same be recorded, the whole panel being called upon to *hearken to it* as the court hath recorded it, and no objection being made, either by any of the jury, or the counsel for the State or prisoner, then such proper verdict, as given through the foreman, is the verdict of the whole panel, *and it is too late, after the record of it, under such circumstances, for any of them to alter or amend it; it is then too late to poll the panel.*" (Emphasis supplied).

While it is now recognized that recordation of the verdict coupled with the hearkening of the jury is an adequate

---

2. Constitution of Maryland, Declaration of Rights Art. 21.

safeguard of the right to a unanimous verdict, it has never been the law in Maryland that hearkening is *the* prerequisite to an acceptable verdict where the jury has been polled. In other words it has not been doubted that polling is a fully commensurable substitute for hearkening. The point was made in *Givens v. State, supra.* There the Court, in holding that hearkening was a matter of substance not mere form, said that as a rule it could not be omitted. The Court, however, referred with approval to the language of a Virginia case "that until the assent of the jury is expressed in this way, *or by a poll,* the jury has a right to retract; and that the verdict is not perfected until after the jury has expressed their assent in one of these ways." *Commonwealth v. Gibson,* 2 Va. Cas. 70. (Emphasis supplied).

The Court recognized in *Givens* that polling is the more particular means "to secure certainty and accuracy, and to enable the jury to correct a verdict, which they have mistaken, or which their foreman has improperly delivered," but in the absence of a request for a poll the practice of hearkening must be followed. Under our practice the hearkening of a verdict is the traditional formality announcing the recording of the verdict. A jury poll has the same effect. The recording of the verdict is the act which signifies the removal of the subject matter from the jury's province. Though the act of recording is seemingly a ministerial function, it is a duty performed *by the court* through its clerk, who for this purpose serves as the court's amanuensis.

The formalizing ceremony of "hearkening" is an alert to the jury to secure certainty and accuracy enabling them to correct any manifest mistake. *Glickman v. State, supra.*[3] Hearkening also serves as an admonition to counsel and the litigants that such verdict "as the court hath recorded it"

---

3. In Glickman, the jury also returned one verdict and was permitted to deliberate upon a second indictment. The initial verdict was merely reported. It was not perfected by either of the traditional procedures prior to the second deliberation. The initial verdict was not conclusive, nor was the subsequent deliberation dependent upon the conclusion of the initial verdict, had the former been perfected.

will no longer be subject to alteration or amendment. *Ford v. State, supra.* It is upon the perfection of that verdict expressed by the jurors' assent either through their acquiescence by hearkening, or through individual consent by poll, that the jury's right to retract that verdict is concluded. *Givens v. State, supra.*[4]

The last formal recorded act of the court in a jury case is the recording of the jury's decision, attended with the traditional formalizing procedures which have become substantive rights. *See Glickman v. State, supra* at 525, citing *Givens v. State, supra.* For those present the formalities of polling signaled the conclusive nature of recording. This was the effect of perfecting the verdict as to Ross. When the judge expressed an intention to return the jury for further deliberations, appellant, as we have previously noted, interposed no objection.

Appellant acknowledges that he is clutching a slender reed in basing his claim of error on the omission of hearkening the verdict. Nevertheless, he urges that when the jury subsequently indicated second thoughts about its verdict, hearkening "would have afforded one final opportunity for the affirmance or disaffirmance of the unanimity of the jury's verdict." We reject appellant's attempt to employ hearkening to defeat the finality of a verdict already conclusively certified by the poll of the jury. We observe that the failure of the clerk to hearken the verdict may well have been caused by the alacrity with which appellant's trial counsel requested that the jury be polled.

Although we think the better practice dictates that the procedure employed by the trial court in the instant case be avoided, we, nevertheless, hold that the court did not err in

---

4. Givens, *supra*, deals at some length with the importance of matters of form and tradition. It is well worth remembering the significance and reasons for certain established "juridical forms." Each is supported by reasons of justice and propriety which are now regarded as matters of substance. Givens gives especial credence to " . . . forms adopted in criminal trials . . . inasmuch as they have a strong tendency, by their solemnity to impress upon all who are engaged in it, the interesting and highly responsible nature and character of the duties which devolve on them respectively." Givens, *supra* at 486.

instructing the jury that it could not reverse a guilty verdict that had been recorded after a poll. For reasons too obvious for discussion in the light of what we have said about the recording of a verdict, we find no merit in appellant's tandem contention that the trial court should have declared a mistrial.

## II

We also find no merit in appellant's contentions relative to the alleged insufficiency of the evidence and entrapment. His challenge to the sufficiency of the evidence is two-fold. He asserts first that Officer Murray failed to exercise the now familiar precautions of searching the informer before and after the controlled purchase. This argument, however, is directed toward the weight, not the sufficiency, of the evidence. Weight of the evidence is a matter to be determined by the trier of fact. *Hill v. State*, 6 Md. App. 555, 252 A. 2d 259 (1969); *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731 (1968). The second aspect of appellant's attack on the evidence takes the form of an assertion that the judge should not have allowed the jury to determine appellant's guilt or innocence based largely upon the testimony of Mr. Brown, "[a]n admitted criminal, an indefinite parolee from Patuxent Institution, a hireling whose very pay depended on the number of arrests he precipitated, . . ." and an inherently dishonest witness. Such an argument goes to Brown's credibility and is for the trier of fact to adjudge. *Bailey v. State*, 16 Md. App. 83, 294 A. 2d 123 (1972); *Ritter v. Danbury*, 15 Md. App. 309, 290 A. 2d 173 (1973); *Colburn v. Colburn*, 15 Md. App. 503, 292 A. 2d 121 (1972). The test of the sufficiency of evidence is whether it directly shows or supports a rational inference of the facts to be proved, from which the trier of facts could fairly be convinced, beyond a reasonable doubt of the defendant's guilt of the offense charged, *Robinson v. State*, 17 Md. App. 451, 302 A. 2d 659 (1973); *Gatewood v. State*, 15 Md. App. 450, 291 A. 2d 688 (1972). The evidence in the instant case is sufficient to sustain the conviction.

In this Court appellant argues that Mr. Brown was effectively an accomplice and, therefore, in order to sustain appellant's conviction the State must have corroborated Brown's testimony. This contention was not raised in the trial court and thus it is not before us. Md. Rule 1085. Even if we were to assume that corroboration were required, the record discloses that the corroboration has been furnished in the form of Detective Murray's testimony.

Appellant contends that he was entrapped by the activity of the police or their agents. He raises the point for the first time in this appeal. The defense of entrapment was neither argued by appellant when he moved for a judgment of acquittal, nor when he renewed that motion. Moreover, he neither asked for an instruction on the law of entrapment nor excepted to the court's instructions as given. Not having been raised and decided by the trial court, the issue of whether appellant was entrapped is not before us. Md. Rule 1085. Assuming arguendo that the issue is properly presented, we have no hesitancy in holding that the appellant was not entrapped. *See Schuman v. State,* 19 Md. App. 400, 311 A. 2d 460 (1973); *Hignut v. State,* 17 Md. App. 399, 303 A. 2d 173 (1973); *Byrd v. State,* 16 Md. App. 391, 297 A. 2d 312 (1972); *Rettman v. State,* 15 Md. App. 666, 292 A. 2d 107 (1972), *cert. denied* September 19, 1972; *Simmons v. State,* 8 Md. App. 355, 259 A. 2d 814 (1969).

III

Appellant also contends that reversible error was committed by the trial court in permitting testimony by the informer, Stephen Brown, relating to past sales of narcotics in which the informer and the appellant were mutually engaged. The record reveals that on direct examination Mr. Brown was interrogated by the State as follows:

"Q Now, prior to this night in question, did you know this person referred to as Breather? [*i.e.,* appellant.]

A Yes, sir.

Q And how long had you known this person prior to this night in question?

A Since 1958, around 1958.

Q How would you characterize your acquaintanceship with Breather?

MR. HARRIS [defense counsel]: Objection.

THE COURT: Sustained.

Q BY MR. SAUER [Assistant State's Attorney]: How would you say you knew him then?

MR. HARRIS: Objection.

THE COURT: Sustained.

Q BY MR. SAUER: *Would you tell us what, if any, contact you had had with Breather from 1958 up to the date in question, February 6, 1973?* [Emphasis supplied].

MR. HARRIS: Objection.

THE COURT: On what grounds?

MR. HARRIS: *I think it is leading, number one, Your Honor; and, I don't see that it has any bearing at all on the events of February 6, 1973.* [Emphasis supplied].

THE COURT: They are superior [conspiracy] charges in the Indictment, and events prior to that may be relevant, and the form of the question, I believe, is not leading. You can answer the question.

A We use [sic] to work together selling narcotics."

It is provided in Md. Rule 522 d:

"*Objection to Evidence*

1. When grounds must be stated. Unless requested by the court it is not necessary to state the grounds for objections to evidence."

This rule had as its primary purpose the simplification of procedure by abolishing "unnecessary and outmoded formalities," thus saving time and expense in trials. *Elmer*

*v. State,* 239 Md. 1, 209 A. 2d 776 (1965). Rule 522 has been made applicable to criminal trials by Rule 725f. The Court of Appeals has held in *Wilt v. Wilt,* 242 Md. 129, 218 A. 2d 180 (1966), that even though it is not necessary to state the grounds for objection to evidence, when counsel is requested by the trial court to articulate the reasons for that objection, he should state *all* his reasons for objecting. If in articulating the reasons for the objection counsel omits to state a particular ground, he is ordinarily regarded as having waived any basis not so stated.

In the instant case the question to which objection was made embraced the period 1958 to February 6, 1973. As such, it was utterly lacking in specificity, and it theoretically, at least, encompassed every social or business contact between the parties for that period of time. The question was objected to on the ground that it was (1) leading and (2) did not have "any bearing at all on the events of February 6, 1973." Patently, the question was not leading. We interpret the second stated reason to be grounded upon irrelevancy. The question was simply not objectionable for either of the reasons assigned by appellant. While it is true that the question dealt with a time frame of fifteen years, it did include within its ambit the crucial date of the alleged offense, and events occuring on that date were certainly relevant to the case then at trial. Further, the question included within its purview relatively recent contacts. Moreover, the question was relevant because the trier of fact must base its judgment on the truth or falsity of the testimony, in part, upon the nature of the relationship between the informer, Brown, and the appellant. The question under attack, while admittedly over-broad in scope, nevertheless, would have appeared to the trial judge to have been designed to demonstrate that relationship.

1 *Wharton's Criminal Evidence* (13th. ed. C. Torcia 1972) § 254 states:

> "In a prosecution for the sale of narcotics, evidence of other sales is admissible to show intent or guilty knowledge. . . ."

*See also* the cases collected in Annot. "Admissibility in prosecution for illegal sales of narcotics of evidence of other sales" 93 A.L.R.2d 1097 *et seq.* (1964).

In *Robinson v. United States,* 366 F. 2d 575, (10th Cir. 1966), Judge Hill writing for the court said:

> "Of course, the general rule is that evidence of another and independent crime is not admissible against an accused; but a recognized exception to that rule is that evidence of other crimes committed by an accused is admissible if such evidence tends to establish a common scheme, system, plan or design on the part of the accused, where it is so related to the crime charged, that it may serve to establish the crime charged or to establish an intent or a motive in the mind of the accused to commit the crime charged. Certainly, all of the crimes charged and the other crimes shown by the questioned evidence were crimes of a similar nature, that is, crimes involving traffic in illegal drugs. This evidence did tend to establish a common scheme, plan and design on the part of the accused and was related to the crimes charged. It did give the jury additional evidence from which it could find intent . . . and ascertain the state of mind of the accused. . . ."

As in *Robinson, supra,* the testimony elicited by the challenged question tended to establish "a common scheme, plan and design on the part of the accused" and was "related to the crime charged."

*Judgment affirmed.*

*Moore, J., dissenting:*

In my view, reversible error was committed by the trial court in permitting testimony by the informer, Stephen Brown, that he and the appellant "use [sic] to work together selling narcotics." At oral argument the State claimed the

answer was "a surprise" and candidly characterized the response of the informer as a "blockbuster."

This is not adverted to by the majority and the State's concessions of probable prejudice to appellant and that the "propriety of the trial court's ruling on the question may be debatable," are also ignored.

In my judgment, the question which the informer was permitted to answer was as objectionable as the two prior questions as to which appellant's objections had been sustained. We have here a truly "dragnet" type inquiry relating to any contacts between the informer and the accused ranging over a period of fifteen years. Such a question is clearly so broad as to be improper. The elementary law here applicable is stated in 58 Am. Jur., *Witnesses*, § 565 as follows:

> "As a general proposition the questions asked a witness should be definite and specific; questions which are so indefinite that they fail to put the adverse party on notice of the testimony sought to be elicited, or which leave it almost entirely to the discretion of the witness as to what matters he shall elucidate, are improper, and *if a timely objection is made the trial court should not allow the witness to answer*." (Emphasis added.)

Defense counsel made a timely objection. The State contended in its brief that any question of error based upon the prejudicial effect of the answer had not been preserved for review because appellant made no objection to the answer nor a motion to strike or for a mistrial. The State's reliance in this respect upon Maryland Rule 522 d 2 is altogether misplaced. This is not a situation where a question is competent, an objection is properly overruled but the answer constitutes inadmissible or unresponsive matter. In such instance, an objection to the answer is reasonable and its form is a motion to strike. *See Wigmore on Evidence*, 3d. Ed., Vol. 1, § 18 p. 344, where the author states:

> "Moreover, where a *question* is objected to, and

> the objection is properly overruled, but the *answer* which follows contains improper evidence, the objection to the question is of no avail; a new objection must be made specifically to the answer; because the answer contains new matter. . . . Here the form of the objection is a motion to strike out."

Again, a motion to strike an answer is the proper technique in situations where objection *before* answer is not feasible. *McCormick on Evidence*, 2d Ed., § 52 cites, for example, the case of the "forward witness" who answers before counsel has a chance to object, or where, after the evidence is received, a ground of objection is disclosed for the first time later in the trial. The author states (p.113):

> "In all these cases, an 'after-objection' may be stated as soon as the ground appears. The proper technique, for such an objection is to phrase a motion to strike out the objectionable evidence, and to request an instruction to the jury to disregard the evidence."

In the instant case, appellant's counsel made timely objection, not once but three successive times, to the State's Attorney's question seeking to elicit from the informer evidence relating to his relationship with the appellant ranging over a period of 15 years, *i.e.*, from 1958 to February 6, 1973, the date of the alleged crimes. The question even as rephrased was clearly improper and the third objection should also have been sustained on, at least, the stated ground of irrelevancy.

The reasons assigned for the objection, at the request of the court and in the presence of the jury, can reasonably be understood only as an expression of counsel's legitimate apprehension that the question would elicit prejudicial matter bearing upon appellant's criminal character or propensity. Under the circumstances, the particularization of the objection was reasonably specific and sufficient. *See Williams v. State*, 229 Md. 606 (1962).

As previously noted, the court overruled the objection on

the third occasion because of the conspiracy charges "and events prior to that may be relevant." [1] To overrule the objection on the rationale of the alleged conspiracy and for the stated reason that "events prior to that [*i.e.*, February 6, 1973] may be relevant," was erroneous. Prior criminal activity between *co-conspirators* has been held by the Court of Appeals to be admissible under certain circumstances and conditions. *Greenwald v. State*, 221 Md. 245, 249 (1960); *Irvin v. State*, 23 Md. App. 457. Here, however, the question posed by the State did not relate to such prior activity between the co-conspirators but to "what, if any, contact" the *informer* had with the appellant since 1958. It was wrong to allow, on the rationale suggested by the trial court, a question so broad as clearly to involve the potential for prejudice which, in fact, occurred.[2] *Compare, United States v. Barcenas*, 498 F. 2d 1110 (5th Cir. 1974).

Where, as here, there is an improper question, a timely objection to which is erroneously overruled, a motion to strike is not essential to preserve the objection for appellate review. A contrary holding, as suggested by the State, would be illogical and would construct a requirement which is plainly absent from Rule 522. It is implicit in prior decisions, that a timely objection to the question will suffice to preserve the prejudicial answer for judicial review. *See Wethington v. State*, 3 Md. App. 237 (1968); *State v. Babb*, 258 Md. 547 (1970), reversing (on grounds of harmless error) *Babb v. State*, 7 Md. App. 116 (1969). The same conclusion is explicit in appellate interpretations of Rule 46 of the Federal Rules of Civil Procedure, the content of which is substantially the same as sections a, ( "Formal Exceptions Unnecessary" ), b, ( "Action Desired or Objection" ) and c, ( "Lack of Opportunity to Object — No Prejudice" ) of Maryland Rule 522. *See Rice v. Louisville & Nashville*

1. The second indictment against appellant charged that he and Marable "did unlawfully conspire with each other," on February 6, 1973, to violate the narcotics laws.

2. The trial court under these circumstances should have required a proffer by the State, out of the hearing of the jury, of the evidence sought to be elicited.

*Railroad Co.,* 309 F. 2d 930 (6th Cir. 1962) where the Court stated:

> "Counsel for the defendant raise the question that plaintiff's counsel made no request for any admonition by the court concerning this evidence [a prior conviction for drunkenness]. Counsel for plaintiff objected to the introduction of the testimony at every point when it was offered. An objection is all that is necessary under Rule 46 F.R.Civ.P."

The majority opinion concludes that the question "was simply not objectionable for either of the reasons assigned by appellant" when the trial court requested an assignment of grounds as authorized by Rule 522 d.1. While the question may not have been leading, one of the grounds stated by counsel, the alternative ground of irrelevancy was certainly not saved, as the majority suggests, by the mere fact that the question included "the crucial date of the alleged offense." *Robinson v. United States,* 366 F. 2d 575 (10th Cir. 1966), upon which the majority relies, cites the familiar rule that evidence of another and independent crime is not admissible but that a recognized exception to the rule is that such evidence may be admissible if it tends to establish absence of mistake or accident, a common scheme, system, plan or design on the part of the accused "where it is so related to the crime charged, that it may serve to establish the crime charged or to establish an intent or a motive in the mind of the accused to commit the crime charged."

In this case the objectionable question did not relate to any activity between the informer and the accused on the day of the alleged conspiracy but, for all that appears, some illicit narcotics-related activity at a remote period of time; and there was no proffer by the State that the evidence sought to be elicited related to any of the recognized exceptions to the general rule above stated.

Nor can it be maintained that in the circumstances of this case, the court's error was harmless. There was here no

curative instruction when the prejudicial response was elicited nor was there an appropriate instruction in the court's general charge to the jury. *Cf. Dixon v. United States,* 287 A. 2d 89, 99 (D.C. App. 1972). That the jury was free to consider the prior selling of drugs, testified to by the informer, as substantive proof of appellant's guilt on the presently charged offense, distribution of heroin, is abundantly clear. This was at complete variance with the rationale for the exclusionary rule that evidence which simply indicates a disposition or propensity on the part of the accused to commit a crime and does not tend to establish any of the elements just numerated is irrelevant and untrustworthy; it deflects the mind of the trier of facts from the single issue of guilt or innocence of the specific crime with which the accused is charged. Wharton, *Criminal Evidence,* Vol. 1, § 240; *Gilchrist v. State,* 2 Md. App. 635 (1967). In the words of Dean Wigmore: "It is objectionable, not because it has no appreciable probative value but because it has too much." *1 Wigmore on Evidence,* (3d Ed. 1960), § 194, p.646.[3]

Strikingly apposite is the statement of Judge Morton for this Court in *Gilchrist v. State, supra:*

> "*This was a jury trial and we have no way of assessing the influence this testimony may have had upon their judgment. Doubts in this regard must be resolved in favor of the Appellant. Fahy v. Connecticut,* 375 U.S. 85; *Barnes and Burgess v. State,* 1 Md. App. 123; *Goodman v. State,* 2. Md. App. 473." (Emphasis added.)

In evaluating error as harmless *vel non,* the opinion of the

---

**3.** It is, of course, elementary that when the accused takes the stand in his own behalf, he is subject to the rules of impeachment of witnesses. Prior convictions of crimes affecting his credibility may be shown, Linkins v. State, 202 Md. 212 (1953), subject to the provisions of Code (1974) Courts Art., § 10-905 (not admissible if appeal pending, time to appeal not expired or conviction reversed) and Courts Art., § 3-834 (proceedings in Juvenile Court not admissible, unless the charge is perjury); and subject to the principle of Burgett v. Texas, 389 U. S. 109, 88 Sup. Ct. 258 (1967) that the conviction occurred when the accused was represented by counsel or there was a valid waiver of his right to counsel.

Court of Appeals in *Babb, supra,* by Judge Finan noted a significant difference between a bench trial and a jury trial (258 Md. at pp. 550-1):

> "As we have previously stated, we think that the admission of the evidence pertaining to the prior conviction for drunkenness; if error at all, was harmless error. We are fortified in this belief by the fact that this was a non-jury case. The assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence, lies at the very core of our judicial system. Such an assumption would be completely unwarranted with regard to a jury of laymen and the impact which evidence may have upon their deliberative powers. *And, if this case had been tried before a jury, our conclusion may well have been different than that presently reached.*" (Emphasis added.)

In the instant appeal, it is significant that the State's case depended in sizable measure on the testimony of the paid informer and the jury manifested some uncertainty about the guilty verdict rendered against appellant when it inquired of the court as to whether or not that verdict might be reconsidered.

It is my conclusion that the court below committed reversible error in overruling appellant's objection and that a new trial should be granted.